# Illinois Official Reports

## Appellate Court

---

### *Zamora v. Lewis*, 2019 IL App (1st) 181642

---

| | |
|---|---|
| Appellate Court Caption | BALDOMERO ZAMORA JR. and BRITTNEY ZAMORA CARTALINO, Individually and as Administrator of the Estate of Baldomero Zamora Sr., Deceased, Plaintiffs-Appellants and Cross-Appellees, v. TROY LEWIS; TRINA LEWIS; AIRBNB, INC.; AIRBNB PAYMENTS, INC.; UNITED TECHNOLOGIES CORPORATION; WALTER KIDDE PORTABLE EQUIPMENT, INC.; JOHN DOES 1-20; and JULIE GILBERT, Defendants (Troy Lewis; Trina Lewis; Airbnb, Inc.; Airbnb Payments, Inc.; United Technologies Corporation; and Walter Kidde Portable Equipment, Inc., Defendants-Appellees and Cross-Appellants). |
| District & No. | First District, Fourth Division No. 1-18-1642 |
| Filed | November 27, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 17-L-5242; the Hon. Daniel T. Gillespie, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |
| Counsel on Appeal | Darren VanPuymbrouck, of Falkenberg Ives LLP, of Chicago, for appellants. |

Steven D. Hamilton, of McGuireWoods LLP, of Chicago, and S. Virginia Bondurant Price (*pro hac vice*) and Nicholas J. Giles (*pro hac vice*), of McGuire Woods, LLP, of Richmond, Virginia, for appellees United Technologies Corporation and Walter Kidde Portable Equipment, Inc.

Neil E. Holmen and Alla Cherkassky Galati, of Walker Wilcox Matousek LLP, of Chicago, for other appellees.

Panel          JUSTICE BURKE delivered the judgment of the court, with opinion.
               Justices Lampkin and Reyes concurred in the judgment and opinion.

## OPINION

¶ 1      Plaintiffs Baldomero Zamora Jr. and Brittney Zamora Cartalino appeal from orders of the circuit court dismissing their lawsuit against defendants Troy and Trina Lewis, United Technologies Corporation, and Walter Kidde Portable Equipment, Inc. (Kidde), on the basis of a lack of personal jurisdiction.[1] In a cross-appeal, those defendants as well as defendants Airbnb, Inc., and Airbnb Payments, Inc. (collectively, Airbnb), challenge the circuit court's decision to reinstate an evidence preservation order entered against Kidde that the court had previously vacated. For the reasons that follow, we affirm the circuit court's dismissal orders, but vacate the evidence preservation order.

¶ 2                                 I. BACKGROUND

¶ 3      Airbnb is an online marketplace that connects people who want to rent out their houses, apartments, or individual rooms therein (the hosts) to people in need of such lodging. Julie Gilbert created an account with Airbnb in August 2015. Trina Lewis, a Maine resident married to Troy Lewis, created an account with Airbnb in July 2016 and agreed to Airbnb's then-operative terms of service. Trina subsequently began listing her house in Boothbay, Maine, on Airbnb. In the online listing under a section for the house's amenities, Trina noted that the house had a smoke detector, and under a section for the house's rules, Trina prohibited parties or events.

¶ 4      In September 2016, Gilbert messaged Trina through Airbnb. In the message, Gilbert stated she lived in Chicago and was going to be traveling to Maine to have a surprise birthday party for her boyfriend. She stated that she was going to bring her boyfriend's son and daughter as well as two other children and wanted to stay in Boothbay. Gilbert concluded the message asking if Trina's house was available because she wanted to stay there. At some point around this time, though it is unclear exactly when, Gilbert requested to reserve two nights at the house with a total of six guests using Airbnb's platform. Eleven days after Gilbert's message, Trina

---

[1]As will later be discussed, "Kidde, Inc.," was incorrectly named in the lawsuit. The correct name of that defendant is "Walter Kidde Portable Equipment, Inc."

responded, apologized for the delayed response, and told Gilbert that she looked forward to meeting her. At some point around this time, though it is unclear exactly when, Trina approved Gilbert's reservation request.

¶ 5    On October 9, 2016, Gilbert along with her boyfriend, Baldomero Zamora Sr. (Zamora), and multiple children were staying at the Lewises' house. During the morning, a child playing with matches accidentally set a couch on fire, which spread to other parts of the house and ultimately resulted in the death of Gilbert's son and Zamora.

¶ 6    In May 2017, Baldomero Zamora Jr. and Brittney Zamora Cartalino, individually and as the administrator of Zamora's estate, sued the Lewises, Airbnb, Kidde, John Does 1-20, and Gilbert under multiple causes of action. The causes of action focused on the ionization-triggered smoke detectors that the Lewises had installed in their house, which allegedly failed to timely activate and caused Zamora's death.

¶ 7    Shortly after plaintiffs filed their lawsuit, they filed an emergency motion to preserve evidence, which the circuit court granted on June 29, 2017. In relevant part, the preservation order required Kidde to "preserve any and all documents related to any other incident in which any of its smoke detectors were alleged not to have activated, or activated too late in a fire."

¶ 8                           A. First Amended Complaint

¶ 9    In July 2017, after obtaining leave from the circuit court, plaintiffs filed a 17-count first amended complaint, in which they named as defendants the Lewises, Airbnb, Inc., Airbnb Payments, Inc., United Technologies Corporation (United), Kidde, John Does 1-20, and Gilbert. In the first amended complaint, plaintiffs alleged that the Lewises, who were residents of Maine, had five ionization-triggered smoke detectors in their house, one on the first floor and four on the second floor, with the latter four allegedly having been manufactured and sold by United and Kidde. Plaintiffs claimed that the Lewises had purchased and installed three of the United and Kidde ionization-triggered smoke detectors in July 2016. At the time plaintiffs filed their first amended complaint, they did not know the identity of the company or companies involved in the chain of distribution of the smoke detector on the first floor. Plaintiffs asserted that the ionization-triggered smoke detectors were inadequate to detect and alert to the common residential house fire and that the ones installed in the Lewises' house failed to timely activate during the fire and proximately caused Zamora's death. According to plaintiffs, the Lewises should have purchased and installed superior, but more expensive, photoelectric smoke detectors.

¶ 10   Plaintiffs pled four counts specifically against the Lewises, three premised upon the Lewises' negligence (counts I through III) and one for a violation of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 et seq. (West 2016)) (count IV). In the three negligence counts, plaintiffs' allegations of negligence centered on the configuration of the Lewises' house, including a lack of egress from the second floor, the furnishings of the house, and the Lewises' decision to equip the house with deficiently designed ionization-triggered smoke detectors. In the count for a violation of the Consumer Fraud Act, plaintiffs alleged that the Lewises made false and misleading representations about the safety of their house in their Airbnb listing and that Zamora "relied on that deception in agreeing to celebrate his birthday there." Concerning jurisdiction over the Lewises, plaintiffs asserted that the circuit court had personal jurisdiction over them because they transacted

business in Illinois by offering to rent their house to Illinois residents as well as contracting with Gilbert for the rental, while she was located in Illinois.

¶ 11 Additionally, plaintiffs pled four counts specifically against United and Kidde, one premised upon strict liability (count IX), one premised upon the failure to warn (count X), one sounding in negligence (count XI), and one for a violation of the Consumer Fraud Act (*id.*) (count XII). In plaintiffs' cause of action for strict liability, they alleged that United and Kidde were in the business of advertising and selling unreasonably dangerous smoke detectors throughout the country, including in Illinois. In plaintiffs' cause of action for the failure to warn, they alleged that United and Kidde failed to disclose the unreasonably dangerous condition of ionization-triggered smoke detectors for residential use and failed to adequately instruct consumers on the proper use of such smoke detectors. In plaintiffs' cause of action for negligence, they alleged that United and Kidde knew or should have known that ionization-triggered smoke detectors were unsuitable for residential use. Lastly, in plaintiffs' cause of action for a violation of the Consumer Fraud Act, they alleged that United and Kidde made false and misleading representations in advertising materials about ionization-triggered smoke detectors around the country, including Illinois, and intended for those false representations to be relied on by consumers. Plaintiffs further claimed that Zamora actually "relied on this deception in agreeing to remain in the [Lewises'] House during his birthday celebration because he believed the House was safe" due to the presence of the Kidde ionization-triggered smoke detectors. Plaintiffs asserted that the circuit court had jurisdiction over United—a Delaware corporation with its principal place of business in Connecticut—and Kidde—a Delaware corporation with its principal place of business in North Carolina—because they transacted business in Illinois and maintained continuous and systematic contacts with Illinois through the sale of their products, including smoke detectors.

¶ 12 In addition, plaintiffs pled four counts specifically against Airbnb (counts V through VIII), three counts specifically against the John Does 1-20—the unknown company or companies involved in the chain of distribution of the smoke detector on the first floor—(counts XIII through XV), and one count specifically against Gilbert (count XVI). The final count was directed against all defendants and sought recoupment for plaintiffs' expenses for Zamora's funeral and burial (count XVII).

¶ 13 B. Personal Jurisdiction Over the Lewises

¶ 14 In August 2017, the Lewises filed a motion to dismiss based on a lack of personal jurisdiction and alternatively, based on *forum non conveniens*. In their jurisdiction argument, the Lewises contended that plaintiffs failed to establish that the circuit court had personal jurisdiction over them because they had no connection to Illinois and did not engage in conduct specifically directed or targeted toward Illinois consumers. Supporting their motion, the Lewises each provided a nearly identical affidavit.

¶ 15 In their affidavits, they averred that they were residents of Maine and had not been in Illinois since 1994. They asserted that, when they listed their house on Airbnb, they did not intend to specifically target Illinois residents or residents of any other state and that they did not direct marketing efforts specifically toward Illinois residents. The Lewises stated that their house was available to any potential renter from anywhere in the world and they had no control over who was interested in renting their house.

¶ 16　　　　In plaintiffs' response, they argued that the circuit court had personal jurisdiction over the Lewises. For support, plaintiffs attached the Airbnb terms of service, which stated that, when a potential renter requests a booking for the host's residence, the host "will be required to either preapprove, confirm or reject the booking request" within a specified period of time; otherwise the booking request would expire. The terms of service further provided that, when the booking request is confirmed, Airbnb "will collect" the total amount due from the renter and pay the host immediately prior to the rental period.

¶ 17　　　　Plaintiffs also attached the listing of the Lewises' house on Airbnb, in which the Lewises provided a description of the house, stated the house's amenities, including the presence of a smoke detector, and noted the house rules, including "no parties or events." In addition, plaintiffs attached the messages sent between Gilbert and Trina through Airbnb regarding the house. Initially, Gilbert wrote Trina and stated:

> "Hello, my name is Julie. I'm from Damariscotta Maine but live in Chicago. im [*sic*] Having a surprise 50tj [*sic*] birthday for my boyfriend and we would love to stay in Boothbay. We are bringing his daughter, son and two Children who've never been to Maine. Is your place available? We'd love it if so. We look forward to hearing from You soon. [*sic*] Thanks so much."

Eleven days later, Trina responded and stated: "Hello Julie, I'm sorry it has taken me so log [*sic*] to get to you. I look forward to meeting you." Plaintiffs further attached communications, which they claimed had been sent by the Lewises to Gilbert, including a lengthier description of the house, reviews from several other previous renters of the house, photographs of the house, and various confirmations about the rental. Lastly, plaintiffs attached communications, which they claimed had been sent by Airbnb on behalf of the Lewises to Gilbert, including a referral program if Gilbert referred additional renters to the Lewises' house, a reminder about the rental, and an option to extend her stay at the Lewises' house.

¶ 18　　　　Plaintiffs asserted that, based on Airbnb's terms of service, the Lewises' advertising of their house on Airbnb, and the communications sent to Gilbert by the Lewises or on their behalf, the Lewises transacted business in, and made a contract substantially connected with, Illinois. Plaintiffs also posited that, because the Lewises advertised that their house had a smoke detector to Illinois residents but knowingly failed to disclose the inadequacies of the ionization-triggered smoke detectors, they committed a tortious act in Illinois from which Zamora's death arose.

¶ 19　　　　The circuit court ultimately concluded that it did not have personal jurisdiction over the Lewises. Initially, the court noted that plaintiffs' arguments that it had personal jurisdiction over the Lewises were based on section 2-209(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2-209(a) (West 2016)), or Illinois's "long-arm" statute, and found that the Lewises did not transact business within Illinois, did not make a contract substantially connected with Illinois, and did not commit a tortious act in Illinois. But the court additionally found that, under an analysis of whether the Lewises had sufficient minimum contacts with Illinois such that exercising personal jurisdiction over them would satisfy due process, the Lewises' connections to Illinois based on their interactions with Gilbert through Airbnb were too limited to satisfy due process. Accordingly, the court granted the Lewises' motion to dismiss.

¶ 20                              C. Personal Jurisdiction Over United and Kidde

¶ 21        In August 2017, United and Kidde entered a special appearance to contest jurisdiction and noted that, although plaintiffs had sued "Kidde, Inc.," they had done so incorrectly, as defendant's proper name was "Walter Kidde Portable Equipment, Inc."[2]

¶ 22        After specially appearing, United and Kidde filed a joint motion to dismiss based on a lack of personal jurisdiction and, alternatively, based on *forum non conveniens* as well as other grounds. Pertinent to their jurisdiction argument, they asserted that Kidde was a North Carolina-based and Delaware-incorporated manufacturer and distributor of fire safety equipment, including smoke detectors. They stated that Kidde was an indirectly owned subsidiary of United, a researcher, developer, and manufacturer of technological products headquartered in Connecticut and incorporated in Delaware. Highlighting that the fire occurred in Maine and the lack of allegations from plaintiffs that the smoke detectors installed in the Lewises' house were sold or used in Illinois, United and Kidde argued that the lawsuit did not arise out of, or relate to, their activities in Illinois for purposes of specific jurisdiction. They also posited that their contacts with Illinois were not so continuous and systematic as to render them essentially at home in Illinois for purposes of general jurisdiction. Supporting their motion, United and Kidde provided multiple affidavits.

¶ 23        In one from Ken Knapp, the assistant treasurer of Kidde, he averred to Kidde's principal place of business and state of incorporation as well as its manufacturing and distributing of smoke detectors. Knapp asserted that, from 2016 until August 2017, Kidde did not have any offices or facilities in Illinois, though one employee worked remotely from his Illinois residence, and Kidde was not licensed or registered to do business in Illinois. In another affidavit from Donna Jenner, the corporate governance specialist of United, she averred to United's principal place of business and state of incorporation. She asserted that United was not registered to do business in Illinois and had never designed, manufactured, or distributed smoke alarms. Jenner stated that "Kidde, Inc.," was a former indirect subsidiary of United but it was no longer an active corporation. Instead, she asserted that "Walter Kidde Portable Equipment, Inc." was the active corporation and it was an indirect wholly owned subsidiary of United.

¶ 24        Lastly in their motion, United and Kidde argued that, because the circuit court lacked personal jurisdiction over Kidde, the court's June 29, 2017, evidence preservation order entered against Kidde had to be vacated as void.

¶ 25        Plaintiffs apparently responded to United and Kidde's motion to dismiss based on a lack of personal jurisdiction, because United and Kidde's reply made numerous references to plaintiffs' responsive arguments and so did the circuit court in its written order resolving the motion to dismiss. The record on appeal, however, does not contain plaintiffs' response, and similarly, plaintiffs' appendix to their brief does not contain the response. Despite this absence, we can generally deduce how plaintiffs responded based on United and Kidde's reply and the circuit court's written order.

¶ 26        In plaintiffs' response, they apparently conceded that the circuit court did not possess general jurisdiction over United and Kidde. Yet plaintiffs asserted that the court did possess specific jurisdiction over them because Kidde committed a tort in Illinois based on its

_____

[2]To avoid confusion, we will still refer to "Walter Kidde Portable Equipment, Inc.," as Kidde, and the circuit court treated both entities as one in the same.

misleading advertising to Illinois consumers and selling of ionization-triggered smoke detectors to Illinois consumers that were inadequate for residential use but that they represented as being adequate. For support, plaintiffs apparently relied on nearly identical affidavits they each provided.[3]

¶ 27 In both affidavits, plaintiffs averred that Zamora had worked at various Home Depot stores in Chicago and he told them that, through his experiences working there, he became familiar with smoke detectors, including those made by Kidde. Plaintiffs averred that Zamora told them he observed advertisements and in-store displays of Kidde smoke detectors at Home Depot and frequently stressed the importance of smoke detectors to his family, including having a habit of looking for them in any place he was staying. Furthermore, according to plaintiffs, Zamora "never once mentioned the difference between ionization and photoelectric smoke detectors or the need to have both types of smoke detectors."

¶ 28 From these affidavits, plaintiffs apparently propounded their theory of specific jurisdiction as follows: Their father worked at various Home Depots in Illinois and observed advertisements for Kidde smoke detectors, which did not differentiate between ionization-triggered smoke detectors and photoelectric smoke detectors. When their father arrived at the Lewises' house in Maine, he checked the residence for smoke detectors and observed Kidde ionization-triggered smoke detectors. Having no reason to believe that such smoke detectors were inadequate for residential use, he chose to remain at the Lewises' house. And thus, when he died in the fire, a root cause was Kidde's failure to provide adequate representations about their ionization-triggered smoke detectors to him in Illinois.

¶ 29 Additionally, plaintiffs attached to their response a redacted confidential stipulation about Kidde's business in Illinois. According to the stipulation, Kidde advertised and sold smoke detectors to Illinois residents through many retailers, including Home Depot, profited from sales of its ionization-triggered smoke detectors in Illinois in excess of $1 million, and sent employees to Illinois for conferences and meetings related to fire safety and sales of its ionization-triggered smoke detectors.[4] Plaintiffs also apparently relied on the deposition of Sharon Cooksey, the manager of marketing and communications for Kidde, who testified regarding Kidde's extensive marketing of ionization-triggered smoke detectors in Illinois through television, the Internet, and in-store displays, including at Home Depot, from 2012 to 2016. Cooksey stated that, from 2012 to 2016, Kidde sold over three million ionization-triggered smoke detectors in Illinois and sales at Home Depot represented the majority of its Illinois business.

¶ 30 In United and Kidde's reply, they argued that the circuit court did not possess specific jurisdiction over them because plaintiffs could not establish an adequate link between their

---

[3]While these affidavits were apparently attached to plaintiffs' response to United and Kidde's motion to dismiss based on a lack of personal jurisdiction, these affidavits were also attached to "Plaintiffs' Omnibus Response to Defendants' Motion to Dismiss on Grounds of *Forum Non Conveniens* and Other Grounds," which was included in a supplemental record on appeal.

[4]Although Kidde's exact profits from selling its ionization-triggered smoke detectors were part of the redacted portion of the confidential stipulation, the circuit court noted in its written decision resolving United and Kidde's motion to dismiss that Kidde "has profited" in Illinois "to the tune of well over $1 Million."

activities in Illinois and the specific claims of the lawsuit. United and Kidde also contended that plaintiffs' jurisdictional theory was based on inadmissible allegations, including hearsay.

¶ 31 In addressing United and Kidde's motion to dismiss based on a lack of personal jurisdiction, the circuit court initially noted that, while "Walter Kidde Portable Equipment, Inc." had been incorrectly sued as "Kidde, Inc.," it would treat both as simply one entity. The court also struck portions of plaintiffs' affidavits, in particular their averments about what Zamora told them, as inadmissible hearsay and statements without a proper foundation. Next, the court determined that it did not have personal jurisdiction over United because, based on Jenner's unrebutted affidavit, United was merely a parent company and not in the business of advertising or selling smoke detectors, which was the basis of plaintiffs' jurisdictional theory over United.

¶ 32 The circuit court then discussed plaintiffs' jurisdiction argument, specifically Kidde's alleged commission of a tortious act in Illinois, noting that it was based on section 2-209(a) of the Code (735 ILCS 5/2-209(a) (West 2016)). However, the court found that, because the fire was the last event giving rise to plaintiffs' cause of action and it occurred in Maine, the tort provision of Illinois's long-arm statute did not confer personal jurisdiction over Kidde. The court continued on and discussed whether jurisdiction could be conferred based on Kidde's contacts with Illinois such that exercising personal jurisdiction over it would satisfy due process. After observing that Kidde's advertising and selling of ionization-triggered smoke detectors in Illinois was pervasive and clearly demonstrated that Kidde purposefully directed its activities toward Illinois, the court nevertheless determined that plaintiffs' cause of action did not arise out of, or relate to, Kidde's activities in Illinois because the smoke detectors at issue were sold in Maine, installed in a Maine house, and allegedly caused a fire in Maine. Furthermore, the court noted that, even if Kidde misrepresented the capability of the ionization-triggered smoke detectors to Illinois consumers, those misrepresentations had nothing to do with the fire that occurred at the Lewises' house in Maine. Therefore, the court found it did not have personal jurisdiction over Kidde, and it accordingly granted United and Kidde's motion to dismiss.

¶ 33 Additionally, the circuit court granted United and Kidde's request to have the evidence preservation order vacated. Lastly, the court expressly found that there was no just reason for delaying the enforcement of the dismissal orders, appeal of the dismissal orders or both.

¶ 34 D. Remaining Proceedings

¶ 35 Around the same time the Lewises and United and Kidde filed their motions to dismiss, Airbnb filed a motion to dismiss based on *forum non conveniens*. The circuit court did not rule on Airbnb's motion while the other motions were pending. After the court resolved those motions, Airbnb filed a motion to schedule a hearing on its motion. A week later, on July 30, 2018, plaintiffs filed a notice of appeal of the court's dismissal orders and decision to vacate the evidence preservation order. The following day, plaintiffs filed a motion to stay the enforcement of the court's decision to vacate the evidence preservation order.

¶ 36 On September 5, 2018, the circuit court reversed its decision to vacate the evidence preservation order and reinstated it over the objection of United and Kidde. That same day, the court stayed the entire case, including staying its ruling on Airbnb's motion to dismiss.

¶ 37 Plaintiffs filed an amended notice of appeal, again challenging the dismissal orders. United and Kidde filed a cross-appeal, in which Airbnb and the Lewises joined, challenging the court's

decision to reinstate the evidence preservation order. This appeal followed.

¶ 38                                    II. ANALYSIS
¶ 39                          A. The Circuit Court Dismissal Orders
¶ 40      Plaintiffs contend that the circuit court erred when it granted the motions to dismiss of the Lewises and United and Kidde because all of them had sufficient contacts with Illinois such that exercising personal jurisdiction over them is proper.

¶ 41                          1. Principles of Personal Jurisdiction
¶ 42      The plaintiff has the burden to establish a *prima facie* showing to exercise personal jurisdiction over a nonresident defendant. *Aspen American Insurance Co. v. Interstate Warehousing, Inc.*, 2017 IL 121281, ¶ 12. However, the plaintiff's *prima facie* case may be overcome if the defendant presents uncontradicted evidence defeating jurisdiction. *Russell v. SNFA*, 2013 IL 113909, ¶ 28. In considering the question of personal jurisdiction, the circuit court may consider the plaintiff's complaint, any affidavits submitted by the parties, and any discovery depositions. *Campbell v. Acme Insulations, Inc.*, 2018 IL App (1st) 173051, ¶ 10. Any unrebutted allegations must be accepted as true (*id.*), but any conflicts in the supporting documentation must be resolved in the plaintiff's favor (*Russell*, 2013 IL 113909, ¶ 28). When the circuit court resolves a jurisdictional question based solely on documentary evidence without holding an evidentiary hearing, as is the case here, our review proceeds *de novo*. *Id.*

¶ 43      Section 2-209 of the Code (735 ILCS 5/2-209 (West 2016)), Illinois's long-arm statute, governs the exercise of personal jurisdiction over a nonresident defendant. There are various subsections under the long-arm statute that identify multiple bases for exercising that jurisdiction. *Id.* Only subsections (a) and (c) are relevant to this appeal. Subsection (a) of the long-arm statute allows the circuit court to exercise personal jurisdiction over a nonresident defendant if the cause of action arises from, among other things, the "transaction" of business in Illinois, the "commission of a tortious act" in Illinois, or "[t]he making or performance of any contract or promise substantially connected with" Illinois. *Id.* § 2-209(a)(1), (2), (7). Subsection (c) of the long-arm statute permits the court to exercise personal jurisdiction "on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." *Id.* § 2-209(c). This provision "conveys personal jurisdiction to the fullest extent consistent with due process." *Sheikholeslam v. Favreau*, 2019 IL App (1st) 181703, ¶ 19.

¶ 44      "Because of the coextensive nature of the long-arm statute and due process requirements, the first step traditionally employed by Illinois courts in personal jurisdiction analysis, that is, whether the defendant performed any of the acts enumerated in the long-arm statute, is now 'wholly unnecessary.' " *Keller v. Henderson*, 359 Ill. App. 3d 605, 612 (2005) (quoting *Kostal v. Pinkus Dermatopathology Laboratory, P.C.*, 357 Ill. App. 3d 381, 387 (2005)). "In other words, the long-arm statute is satisfied when due process concerns are satisfied, regardless of whether the defendant performed any of the acts enumerated in the long-arm statute." *Id.*; see also *Madison Miracle Productions, LLC v. MGM Distribution Co.*, 2012 IL App (1st) 112334, ¶ 43 (stating the same). Thus, "[i]f both the federal and Illinois due process requirements for personal jurisdiction have been met, the Illinois long-arm statute is satisfied and no other inquiry is required." *Keller*, 359 Ill. App. 3d at 612. Conversely, if the requirements of due process are not satisfied, then personal jurisdiction under the long-arm statute is not proper.

*Hanson v. Ahmed*, 382 Ill. App. 3d 941, 943-44 (2008). Where there is no claim that Illinois due process protections differ from federal due process protections, as is the case here, we do not "consider our long-arm statute separately from federal due process concerns." *Russell*, 2013 IL 113909, ¶ 33.

¶ 45 Consistent with due process, an Illinois court may exercise personal jurisdiction over a nonresident defendant only where that defendant has "certain minimum contacts" with Illinois such that allowing a lawsuit to proceed "does not offend traditional notions of fair play and substantial justice." (Internal quotations marks omitted.) *Aspen American Insurance*, 2017 IL 121281, ¶ 14. In determining whether a nonresident defendant has certain minimum contacts, our inquiry depends upon the category of personal jurisdiction being sought: general or specific. *Russell*, 2013 IL 113909, ¶ 36. General jurisdiction is all-purpose and requires a defendant to have affiliations with the forum state that are so continuous and systematic as to render him or her essentially at home there. *Aspen American Insurance*, 2017 IL 121281, ¶¶ 14, 16. But plaintiffs do not argue that the circuit court possessed general jurisdiction over the Lewises or United and Kidde. Rather, plaintiffs argue that the circuit court possessed specific jurisdiction over them.

¶ 46 Specific jurisdiction is case-specific. *Id.* ¶ 14. For a forum to exercise specific jurisdiction consistent with due process, the defendant's litigation-related "conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. ___, ___, 134 S. Ct. 1115, 1121 (2014). To establish this substantial connection, the plaintiff must show that (1) "the defendant purposefully directed its activities at the forum state" and (2) "the cause of action arose out of or relates to the defendant's contacts with the forum state." *Russell*, 2013 IL 113909, ¶ 40. Under the requirement of purposeful availment, there must "be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (Internal quotation marks omitted.) *Id.* ¶ 42. The requirement exists so a nonresident defendant is not required to litigate in a forum due to attenuated or random contacts or the unilateral acts of a consumer. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

¶ 47 But even if a nonresident defendant purposefully directs its activities at a forum state, the cause of action must arise out of, or relate to, the defendant's contacts with the forum state. *Russell*, 2013 IL 113909, ¶ 40. "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." (Internal quotation marks omitted.) *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Stated otherwise, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.' " *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. ___, ___, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear*, 564 U.S. at 919). As the United States Supreme Court has explained, "[w]hen there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* at ___, 137 S. Ct. at 1781. The United States Supreme Court has yet to specifically define what it means for a cause of action to arise out of, or relate to, the defendant's contacts with a forum state, though several circuit courts of appeal have found that such a standard should be flexible and lenient. *Russell*, 2013 IL 113909, ¶ 83.

¶ 48 Although the Internet has presented another wrinkle in the personal jurisdiction analysis, the general framework has not changed, as the "ultimate analysis is what it has always been—

whether the quality and nature of the defendant's contacts with the forum are such that it is fair and reasonable to assert personal jurisdiction." *Innovative Garage Door Co. v. High Ranking Domains, LLC*, 2012 IL App (2d) 120117, ¶ 20. If we determine that a nonresident defendant has purposefully directed its activities at Illinois and the cause of action arose out of or relates to the defendant's contacts with Illinois, we also must consider whether it is reasonable to require the defendant to litigate in Illinois. *Russell*, 2013 IL 113909, ¶ 87. Lastly, an analysis about personal jurisdiction is not a contest to determine which state is the best forum for adjudication, because the mere fact another state may also have personal jurisdiction is irrelevant. *Viktron Ltd. Partnership v. Program Data Inc.*, 326 Ill. App. 3d 111, 118-19 (2001).[5]

¶ 49                              2. Personal Jurisdiction Over the Lewises

¶ 50        Plaintiffs argue that the circuit court can exercise specific jurisdiction over the Lewises because they (1) listed their house on Airbnb with a notation that it had a smoke detector but failed to warn Illinois residents about the deficiencies of the Kidde ionization-triggered smoke detectors and the lack of a means of egress from the second floor of their house, resulting in them directing their misrepresentations about the house toward Illinois, (2) knowingly engaged in a commercial relationship with Gilbert, an Illinois resident, and (3) negotiated with Gilbert over the rental.

¶ 51        In this case, the pertinent facts regarding the Lewises were that they created an account with Airbnb and agreed to its terms of services, which allowed them to create a rental listing of their Maine house. As part of those terms of service, the Lewises had the authority to preapprove a guest, confirm a guest, or reject a guest. In their rental listing, the Lewises described their house and listed its various amenities, including the presence of a smoke detector. As well, the Lewises had a rule for prospective renters that their house could not be used for "parties or events." The listing was created on Airbnb, and once published, the listing was available to view by any user of Airbnb, regardless of their location. Gilbert was a user of Airbnb, and she contacted the Lewises through Airbnb. In the message, Gilbert stated she was from Chicago and would be traveling to Maine to have a surprise birthday party for her boyfriend. She added that she was going to bring four children and wanted to stay in Boothbay. Gilbert concluded the message asking if the Lewises' house was available because she wanted to stay there. At some point around this time, though it is unclear exactly when, Gilbert requested to reserve two nights at the house with a total of six guests. Trina responded, albeit delayed, apologized for the delayed response, and told Gilbert that she looked forward to meeting her. At some point around this time, though it is unclear exactly when, Trina approved Gilbert's reservation request.

¶ 52        The Lewises' actions in this case resemble the actions of the defendants in *Pilipauskas v. Yakel*, 258 Ill. App. 3d 47 (1994). There, the plaintiffs, Illinois residents, sued the owners of a Michigan lodge for injuries related to alleged carbon monoxide poisoning that occurred while they were vacationing at the lodge. *Id.* at 49. Although the defendants had rented hundreds of

---

[5]Related to this principle, as United and Kidde note in their brief, plaintiffs have filed a nearly identical complaint in the superior court of Maine against the Lewises, Gilbert, Airbnb, United, and Kidde. United and Kidde have attached a copy of that complaint, of which we may take judicial notice. See *Seymour v. Collins*, 2015 IL 118432, ¶ 6 n.1.

units at their lodge to Illinois residents over the years and Illinois residents made up the majority of their guests, they never directly advertised nor solicited business in Illinois and had never visited Illinois for business. *Id.* at 49-50. The defendants did, however, provide trade associations with brochures of the lodge, and those trade associations distributed the brochures at various trade shows. *Id.* at 50. The defendants also would respond to inquiries from potential guests by sending them brochures for the lodge. *Id.* Despite the defendants hosting hundreds of Illinois residents at their lodge, the appellate court held that Illinois courts did not have personal jurisdiction over them, finding it "extremely doubtful" that they would have fair warning that they could be sued in Illinois for injuries sustained as a result of an alleged carbon monoxide poisoning occurring in Michigan where "the cause of action ha[d] no relationship to Illinois except that plaintiffs came from Chicago." *Id.* at 58-59.

¶ 53    The Lewises' connections to Illinois are similar in nature to the defendants' connections to Illinois in *Pilipauskas*, but far less in quantity. Just like the defendants in *Pilipauskas*, the Lewises never directly advertised nor solicited business in Illinois and never came to Illinois for business. Although never mentioned in *Pilipauskas*, it is reasonable to assume that the defendants, as the owners of the lodge, could have rejected potential guests, as was the case with the Lewises. Furthermore, just like the defendants in *Pilipauskas*, who responded to inquiries from potential renters, including presumably those from Illinois, here the Lewises responded to an inquiry from Gilbert, an Illinois resident. But whereas the defendants in *Pilipauskas* rented *hundreds* of lodge units to Illinois residents, the Lewises rented their house *once* to an Illinois resident. Thus, if the appellate court in *Pilipauskas* found it unfathomable that the defendants could be sued in Illinois for such a Michigan-centric alleged injury, we too cannot fathom that the Lewises had fair warning that they could be sued in Illinois for injuries sustained as a result of a fire occurring in Maine where the cause of action had no relationship to Illinois except that their guests came from Illinois.

¶ 54    It is the brevity of the relationship between the Lewises and Gilbert (and her guests) that we find of critical importance in our jurisdictional analysis. The Lewises rented their house to Gilbert, who had informed them she was from Illinois, and thus, it is undisputed that they knowingly engaged in a commercial relationship with an Illinois resident. But significantly, the Lewises' commercial relationship with Gilbert did not create any obligations for them in Illinois with respect to her or any other Illinois residents, and beyond the one-time, two-day rental of the Lewises' house in Maine to Gilbert, the arrangement did not create any future commitments between the parties. See *Walden*, 571 U.S. at ___, 134 S. Ct. at 1122 (observing that the minimum contacts analysis for specific jurisdiction focuses on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there").

¶ 55    Plaintiffs, however, claim that the Lewises and Gilbert negotiated over the terms of the rental house, in particular over the Lewises' house rule of no events or parties. Plaintiffs note that, in Gilbert's message to Trina, she indicated that she would be hosting a surprise birthday party for her boyfriend (Zamora). And according to plaintiffs, when Trina responded to Gilbert's message and ultimately confirmed Gilbert's booking request, this constituted negotiations over the use of the rental house. Even if we agreed with plaintiffs that these two messages constituted negotiations, based on the reasoning from *Pilipauskas*, the Lewises' connections to Illinois would still be far too tenuous. But we point out that Gilbert's message in no way made it clear that the surprise birthday would be held at the house she rented through

Airbnb, and Trina's response in no way made it clear that she would be relaxing the house rules to accommodate Gilbert and her guests. We fail to see how the ambiguous messages between Gilbert and Trina constituted negotiations over the use of the rental house. Moreover, a small gathering of six people, which included children according to Gilbert's message, was likely not the type of party or event the Lewises' house rule was aimed at preventing in the first place.

¶ 56 Plaintiffs also highlight the communications directed at Gilbert after making her booking reservation request, in particular, according to them, where the Lewises allegedly attempted to forge new business opportunities in Illinois by highlighting a referral program for other people to rent the house and where the Lewises provided Gilbert an option to extend her stay at their house. However, as reflected in the Lewises' responses to plaintiffs' requests for production, these communications came from Airbnb, not the Lewises. Thus, contrary to plaintiffs' position, these communications were not the Lewises' attempts to forge new business and cannot support the exercise of jurisdiction over them in Illinois. See *id.* at ___, 134 S. Ct. at 1123 ("[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."). And concerning the remaining communications sent to Gilbert regarding the Lewises' Airbnb, including a lengthier description of the house, reviews from previous renters, and photographs of the house, these are no different than the brochures sent by the defendants in *Pilipauskas* to prospective guests. And most critically, these communications do not demonstrate any long-standing relationship in Illinois by the Lewises and, thus, no substantial connection to Illinois.

¶ 57 The brevity of the commercial relationship between the Lewises and Gilbert is what distinguishes the present case from *Innovative Garage Door Co.*, 2012 IL App (2d) 120117, a case heavily relied on by plaintiffs for establishing jurisdiction over the Lewises in Illinois. There, a nonresident defendant, High Ranking Domains, LLC (HRD), owned various websites designed to solicit inquiries from consumers in need of various household work, including garage door services. *Id.* ¶ 3. Consumers could go to a website of HRD, select their state (such as Illinois), their city, and their service need, and in return, consumers would obtain the name of a local company that could perform the work. *Id.* ¶ 4. HRD's business model was to sell service leads to companies across the United States, including those in Illinois. *Id.* ¶¶ 3-5. Innovative Garage Door Company (Innovative Garage), an Illinois-based business, entered into a contract with HRD where it would receive 150 leads a year for $15 each. *Id.* ¶¶ 3, 6. Some three years into the parties' relationship, HRD terminated the agreement to begin selling leads to another company, which prompted Innovative Garage to sue for breach of contract under the theory that the agreement was in perpetuity and could only be canceled by Innovative Garage. *Id.* ¶ 7.

¶ 58 The appellate court found that HRD was subject to personal jurisdiction in Illinois and noted that HRD's connection to Illinois was based on a "long-term" and allegedly "open-ended" relationship with an Illinois business. *Id.* ¶ 25. And pursuant to that relationship, HRD helped arrange business transactions between Innovative Garage and Illinois consumers. *Id.* In contrast to connections to Illinois that arise fortuitously or randomly, the court determined that HRD's connections to Illinois arose "from substantial obligations in [Illinois] to which HRD voluntarily subjected itself by entering into a contract with an Illinois resident." *Id.* This court further determined that, because HRD's business model relied on Illinois consumers filling out forms on its website, HRD's activities were "expressly directed toward Illinois residents" and

- 13 -

not created as the result of random or fortuitous contacts. *Id.* ¶ 26. Whereas the defendant in *Innovative Garage* had a long-term and allegedly indefinite relationship with an Illinois business and substantial connections to Illinois residents based on its referral business model, the Lewises' connection to Illinois was nothing more than a fleeting, one-time relationship with an Illinois resident that did not commit them to any long-term obligations in Illinois.

¶ 59     It is true that, according to Airbnb's terms of service, the Lewises had control over who ultimately rented their house, meaning the relationship between the Lewises and Gilbert was not the result of the unilateral act of a consumer but rather bilateral acts of Gilbert's request and the Lewises' approval. See *Burger King*, 471 U.S. at 475 (a defendant cannot be forced to litigate in a forum solely as the result of the unilateral act of a consumer); see also *MacNeil v. Trambert*, 401 Ill. App. 3d 1077, 1082-83 (2010) (the circuit court did not have specific jurisdiction over a nonresident defendant who sold an item on eBay to the plaintiff, an Illinois resident, because an eBay seller has no control over who prevails as the highest bidder and, thus, no control over where the purchaser resides). But still, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden*, 571 U.S. at ___, 134 S. Ct. at 1123 (quoting *Burger King*, 471 U.S. at 475).

¶ 60     Here, while the Lewises could reject a potential guest, they did not target Illinois residents, and their relationship with Gilbert was thus created randomly and fortuitously by Gilbert initiating the relationship by messaging them and expressing a desire to rent their house. See *National Gun Victims Action Council v. Schecter*, 2016 IL App (1st) 152694, ¶ 25 (finding the circuit court did not have personal jurisdiction over the nonresident defendants where they "did not purposefully direct their efforts at Illinois residents" but rather "plaintiffs just happened to be residents of Illinois with whom defendants entered into a transaction unconnected with this state"). [6] Given the fleeting arrangement between the Lewises and Gilbert, and their arrangement being initiated randomly and fortuitously by Gilbert, the Lewises' acts did not establish that they purposefully availed themselves of the privileges of doing business in Illinois and were insufficient to have created a substantial connection with Illinois. See *Pilipauskas*, 258 Ill. App. 3d at 59 (finding no personal jurisdiction over the defendants in Illinois where "[t]he plaintiffs chose to initiate a contact with nonresident defendants and chose to travel to Michigan, where they intended to spend some time vacationing").

¶ 61     In one last attempt to demonstrate that the circuit court can exercise specific jurisdiction over the Lewises, plaintiffs claim that the Lewises transmitted misrepresentations about the safety of their house to Illinois residents and that Zamora relied on those misrepresentations in traveling to, and remaining at, their house. For support, plaintiffs rely on *Zazove v. Pelikan, Inc.*, 326 Ill. App. 3d 798 (2001). In *Zazove*, the appellate court found that the circuit court had personal jurisdiction over a distribution company where it distributed pens in Illinois and "purposefully marketed" pens "to Illinois residents through a variety of media" and where the plaintiff, a resident of Illinois who filed a class action complaint, claimed that the distribution

---

[6]Although in plaintiffs' reply brief, they posit that the *Schecter* case is "an unreported opinion" and therefore should be disregarded by this court pursuant to Illinois Supreme Court Rule 23(e) (eff. Apr. 1, 2018), we find that position to be mistaken. The *Schecter* case is a published opinion, though it was initially filed as a Rule 23 order before being published as an opinion.

- 14 -

company's "marketing was allegedly premised on a false promise in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act." *Id.* at 808. But as previously noted, the Lewises did not purposefully direct any marketing efforts toward Illinois consumers, and thus, plaintiffs' reliance on *Zazove* is misplaced.

¶ 62    Finally, after the parties completed briefing on appeal, this court issued a decision in *Dixon v. GAA Classic Cars, LLC*, 2019 IL App (1st) 182416, which warrants a brief discussion. In the case, the North Carolina-based defendant owned a website that livestreamed auctions for vehicles. *Id.* ¶¶ 1, 3. The plaintiff, an Illinois resident, saw an online advertisement from the defendant listing a 1973 Ford Bronco for sale at an auction. *Id.* ¶¶ 3, 5. In response to the advertisement, the plaintiff e-mailed the defendant asking about the Bronco and how to bid for the vehicle. *Id.* ¶ 3. The defendant replied and invited the plaintiff to bid on the vehicle at the upcoming auction. *Id.* The plaintiff further asked for photographs of the Bronco's engine, and the defendant informed him that it would send those photographs to him once it received them from the Bronco's owner. *Id.* Thereafter, the plaintiff and the defendant had several additional communications about the Bronco, including by e-mail, telephone, and text message. *Id.* ¶¶ 3-5. In one phone call between the two, the defendant obtained the plaintiff's bid on the Bronco. *Id.* ¶ 5. At the auction, the plaintiff was the highest bidder. *Id.* However, after he received the Bronco, he noticed several issues with the vehicle and sued the defendant for fraud. *Id.* ¶¶ 5-7. Ultimately, on the defendant's motion, the circuit court dismissed the complaint for a lack of personal jurisdiction. *Id.* ¶¶ 7-8. On appeal, this court reversed the dismissal, finding that Illinois could exercise specific personal jurisdiction over the defendant because of the nature and quality of the communications between the parties about the Bronco, the fact that the defendant actively engaged in a nationwide advertising campaign for its auction website, and the fact that the defendant received payment through its website from the plaintiff. *Id.* ¶¶ 13-20.

¶ 63    However, in the present case, the communications between Gilbert and the Lewises were far less in nature and quality and included merely one exchange. Furthermore, the defendant in *Dixon* actually owned the auction website, accepted payment from the plaintiff through the website, and apparently did not own the vehicle for sale at the auction but rather was a conduit for its sale. As such, the defendant in *Dixon* is more akin to Airbnb than the Lewises, as the Lewises did not own Airbnb's website, Gilbert paid Airbnb, not the Lewises, and Airbnb merely acted as the conduit for the rental of the Lewises' house. *Dixon* therefore does not compel a different result.

¶ 64    In sum, the Lewises knowingly rented their house to an Illinois resident, and while this created a commercial relationship with an Illinois resident, it was a brief, one-time occurrence that was created randomly and fortuitously by Gilbert and did not obligate the Lewises to any obligations in Illinois or further obligations with respect to Gilbert beyond the two-day rental period. This tenuous connection to Illinois does not satisfy the minimum contacts required to satisfy due process concerns and confer personal jurisdiction on the Lewises in Illinois. Subjecting them to litigation in Illinois by simply approving a potential renter of their house who they knew was from Illinois and writing a courteous response message to that renter would not comport with traditional notions of fair play and substantial justice. Accordingly, the circuit court properly granted the Lewises' motion to dismiss based on a lack of personal jurisdiction.

¶ 65                        3. Personal Jurisdiction Over United and Kidde

¶ 66         Plaintiffs next argue that the circuit court can exercise specific jurisdiction over United and
Kidde because of their substantial business connections to Illinois, in particular their business
related to selling and advertising of ionization-triggered smoke detectors, and their
misrepresentations in marketing about the efficacy of ionization-triggered smoke detectors that
Zamora was exposed to at Home Depot in Illinois and relied on at the Lewises' house in Maine.

¶ 67         Before addressing the specifics of United and Kidde's contacts with Illinois, we briefly
address a preliminary issue, which was the circuit court's decision to strike portions of
plaintiffs' affidavits based on averments therein being inadmissible hearsay. Under Illinois
Supreme Court Rule 191(a) (eff. Jan. 4, 2013):

> "[A]ffidavits submitted in connection with a motion to contest jurisdiction over the
> person *** shall be made on the personal knowledge of the affiants; shall set forth with
> particularity the facts upon which the claim, counterclaim, or defense is based; shall
> have attached thereto sworn or certified copies of all documents upon which the affiant
> relies; shall not consist of conclusions but of facts admissible in evidence; and shall
> affirmatively show that the affiant, if sworn as a witness, can testify competently
> thereto."

An affidavit under Rule 191(a) is akin to trial testimony and should satisfy the same requisites
for competent trial testimony. *US Bank, National Ass'n v. Avdic*, 2014 IL App (1st) 121759,
¶ 22. "If, from the document as a whole, it appears that the affidavit is based upon the personal
knowledge of the affiant and there is a reasonable inference that the affiant could competently
testify to its contents at trial, Rule 191 is satisfied." *Kugler v. Southmark Realty Partners III*,
309 Ill. App. 3d 790, 795 (1999). It is axiomatic that, if averments in a Rule 191(a) affidavit
are based on inadmissible hearsay, the affiant could not competently testify to those averments
at a trial. See *Radtke v. Murphy*, 312 Ill. App. 3d 657, 663-64 (2000).

¶ 68         In the affidavits of plaintiffs, they each averred that their father told them he observed
advertisements and in-store displays of Kidde smoke detectors through working at Home
Depot stores in Chicago and became familiar with Kidde smoke detectors as a result. While
United and Kidde argue these averments were hearsay as extrajudicial statements offered to
prove the truth of the matter asserted (see *Greco v. Orthopedic & Sports Medicine Clinic, P.C.*,
2015 IL App (5th) 130370, ¶ 26), plaintiffs assert the averments were not hearsay because their
purpose was to show Zamora's state of mind. See *In re Estate of DeMarzo*, 2015 IL App (1st)
141766, ¶ 20 (where a statement is offered to demonstrate "a person's knowledge or awareness
of a circumstance and not to establish the truth of the circumstance," the statement is not
hearsay). In a technical sense, the statements made by Zamora to plaintiffs do represent his
state of mind, but as noted by United and Kidde, plaintiffs' theory of jurisdiction is that Zamora
observed and relied on Kidde's advertisements in Illinois before traveling to Maine and
remaining at the Lewises' house. This theory depends entirely on the truth of the statements
made by Zamora to plaintiffs. So while the statements may represent Zamora's state of mind,
*i.e.*, his knowledge of a circumstance, there is no question that plaintiffs relied on the
statements for the truth of the mattered asserted in them, *i.e.*, to establish the truth of the
circumstance. See *id.* Consequently, we agree with the circuit court's decision to strike the
aforementioned portions of plaintiffs' affidavits as inadmissible hearsay, and those averments
cannot support plaintiffs' jurisdictional arguments against United and Kidde. See *Campbell*,
2018 IL App (1st) 173051, ¶ 22 (finding, where a plaintiff attempted to use inadmissible

hearsay as a basis to establish the circuit court's personal jurisdiction over a defendant, the plaintiff violated Rule 191(a) and the appellate court would disregard the hearsay in its jurisdictional analysis).

¶ 69    With the hearsay issue resolved, the evidence of Kidde's connection to Illinois is their general, yet pervasive, business activities in the state. As noted, Kidde heavily advertised its ionization-triggered smoke detectors in Illinois, sold more than 3 million of them in Illinois, and profited off of those sales in excess of $1 million. Additionally, Kidde sent multiple employees to Illinois for various work-related activities. However, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." (Internal quotation marks omitted.) *Goodyear*, 564 U.S. at 919. And "[w]hen there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers*, 582 U.S. at ___, 137 S. Ct. at 1781.

¶ 70    While it is undisputed that Kidde conducted substantial business in Illinois, including substantial business with respect to its ionization-triggered smoke detectors, and has purposefully directed its activities toward Illinois, those activities were unconnected with the litigation in this case. Critically, the Kidde smoke detectors at issue in this case were not purchased in Illinois, were not purchased by Illinois residents, were not installed in an Illinois house, and did not allegedly cause a fire in Illinois. Given the conduct that gave rise to this ligation occurred outside of Illinois, there is an insufficient connection between Illinois and the underlying controversy, regardless of how strong Kidde's unrelated business activities are in Illinois. See *id.*

¶ 71    Nevertheless, plaintiffs attempt to demonstrate the requisite connection between Illinois and the underlying controversy by highlighting the allegations in count XII of their first amended complaint—the count against United and Kidde alleging a violation of the Consumer Fraud Act. Plaintiffs point to their allegations that Zamora relied on Kidde's allegedly deceptive advertising of the ionization-triggered smoke detectors in Illinois when he agreed to travel to the Lewises' house in Maine and then remained there because he believed the house was safe due to the presence of the Kidde ionization-triggered smoke detectors. First, in the Lewises' advertising of their house on Airbnb, they merely stated that the house was equipped with a smoke detector. It is completely speculative that Zamora would have somehow known the Lewises' house was equipped with *Kidde ionization-triggered smoke detectors*. See *Flanders v. California Coastal Communities, Inc.*, 356 Ill. App. 3d 1113, 1119 (2005) (stating that "[t]he jurisdiction of the courts is not meant to be a speculative venture"). Thus, to the extent plaintiffs argue that Zamora would not have traveled to Maine but for Kidde's allegedly misleading advertising, the argument is entirely too speculative to support personal jurisdiction in Illinois.

¶ 72    Second, plaintiffs' assertion in their amended complaint that Zamora relied on Kidde's allegedly misleading advertising in Illinois and then remained at the Lewises' house in Maine because he believed the smoke detectors were safe was not a well-pled fact but rather a conclusory allegation. Plaintiffs do not allege any specific facts to support their claim that Zamora relied on this allegedly misleading advertising in Illinois but merely summarily concluded he did. To be sure, plaintiffs foresaw the need to provide their own affidavits to support the allegation of how it came to be that Zamora relied on Kidde's allegedly misleading advertising in Illinois in order to supply the requisite nexus to Illinois for personal jurisdiction

purposes. But because this allegation in the amended complaint is not composed of any well-pled facts, we need not accept it as true, and the allegation does not support plaintiffs' jurisdictional argument. See *Quinn v. Board of Education of the City of Chicago*, 2018 IL App (1st) 170834, ¶¶ 57-58 (remarking that, because Illinois is a fact-pleading jurisdiction, plaintiffs "cannot simply set forth conclusions" in their complaints and "[m]ere conclusory allegations unsupported by specific facts do not suffice" for pleading purposes). Moreover, plaintiffs' affidavits do not help their jurisdictional cause in providing the requisite nexus to Illinois because, as previously discussed, they were based on inadmissible hearsay.

¶ 73    Still, even disregarding the hearsay issue and well-pled nature of the allegation, plaintiffs attempt to confer jurisdiction on Kidde in Illinois based solely on their alleged misleading advertising of a particular product in Illinois, to which Zamora was allegedly exposed in Illinois. And based on the allegedly misleading advertising to which Zamora was allegedly exposed, he decided to travel to Maine and stay at an Airbnb with Kidde ionization-triggered smoke detectors because he believed, based on the alleged misleading advertising, that the Kidde smoke detectors would protect him in case of a fire. Such a jurisdictional theory to Illinois, even under a lenient and flexible meaning of "arising out of" or "related to," is too tenuous to succeed, where all of the events underlying the litigation occurred in Maine. A mere connection to Illinois is not enough to confer specific jurisdiction onto a defendant in Illinois, but rather the defendant's litigation-related "conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at ___, 134 S. Ct. at 1121. That substantial connection between Kidde's litigation-related conduct and Illinois is lacking.

¶ 74    Additionally, in support of their argument that the circuit court can exercise specific jurisdiction over Kidde, plaintiffs rely on *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100 (2005), and *Zazove*, 326 Ill. App. 3d 798. First, *Avery* has nothing to do with specific jurisdiction. Rather, *Avery* discussed whether nonresidents could assert claims under the Consumer Fraud Act for transactions occurring outside of Illinois. See *Avery*, 216 Ill. 2d at 179. Or, in other words, whether nonresident plaintiffs had causes of action under the Consumer Fraud Act. *Id.* at 190. In the present case, we are not deciding whether a cause of action exists under the Consumer Fraud Act, but rather whether the circuit court has specific jurisdiction over United and Kidde. *Avery* is therefore inapposite.

¶ 75    In *Zazove*, 326 Ill. App. 3d at 800-01, 808, a case we have previously discussed, the defendant purposefully advertised a pen in Illinois through a variety of media, and the plaintiff, who bought the pen in Illinois allegedly in reliance upon the advertising, filed a class action complaint, claiming that the defendant violated the Consumer Fraud Act based upon that advertising. Thus, the litigation-related conduct of the defendant was that it transmitted allegedly misleading advertising in Illinois, an Illinois resident observed that allegedly misleading advertising in Illinois, and he acted in buying a pen in reliance on the advertising in Illinois. See *id.* Conversely, in this case, while Kidde did advertise its ionization-smoke detectors in Illinois, the smoke detectors at issue were bought in Maine, installed in a house in Maine, allegedly failed to timely alert to a fire in Maine, and allegedly caused death in Maine. Whereas in *Zazove*, the defendant's litigation-related conduct created a substantial connection with Illinois, Kidde's litigation-related conduct did not. Plaintiffs' reliance on *Zazove* is therefore unpersuasive.

¶ 76    In sum, Kidde conducted substantial business activities in Illinois, including advertising its ionization-triggered smoke detectors that were the smoke detectors that allegedly failed to

timely activate in the Lewises' house and allegedly caused Zamora's death. But Kidde's general business activities and even those specific to the ionization-triggered smoke detectors were unrelated to the very controversy in this case that establishes jurisdiction: the death of Zamora as a result of a fire occurring in Maine at the house of Maine residents, who purchased allegedly deficient smoke detectors in Maine. As such, plaintiffs' cause of action against Kidde did not arise out of, or relate to, Kidde's contacts with Illinois. Consequently, Kidde did not have the requisite minimum contacts to satisfy due process concerns and confer jurisdiction over it to Illinois courts. Turning briefly to United, who was merely a parent company not engaged in the advertising or selling of ionization-triggered smoke detectors, if Kidde's contacts with Illinois were insufficient for personal jurisdiction in Illinois, United's contacts are likewise insufficient with Illinois for personal jurisdiction in Illinois. Accordingly, the circuit court properly granted United and Kidde's motion to dismiss based on a lack of personal jurisdiction.

¶ 77                                    B. The Evidence Preservation Order

¶ 78     Lastly, we address the cross-appeal filed by United and Kidde, in which Airbnb and the Lewises joined, that challenged the circuit court's decision to reinstate the evidence preservation order entered against Kidde. As discussed, in the early stages of litigation in this case, plaintiffs filed an emergency motion to preserve evidence, which the court granted. In relevant part, that preservation order required Kidde to "preserve any and all documents related to any other incident in which any of its smoke detectors were alleged not to have activated, or activated too late in a fire." However, later during litigation, the court vacated that order, then reversed course and reinstated the order. United and Kidde contend that, because the court does not have personal jurisdiction over Kidde, it was without legal authority to enter the preservation order.

¶ 79     "Courts must have both subject-matter and personal jurisdiction to enter a valid judgment." *People v. Matthews*, 2016 IL 118114, ¶ 17. "If a court lacks either subject matter jurisdiction over the matter or personal jurisdiction over the parties, any order entered in the matter is void *ab initio* ***." *In re M.W.*, 232 Ill. 2d 408, 414 (2009). And while an objection to personal jurisdiction can be waived (see *id.* at 427), it was not in this case. Therefore, the circuit court's evidence preservation order entered against Kidde was entered without the court having personal jurisdiction over Kidde. Consequently, the court could not enter a valid order against Kidde, and the order is void. See *Matthews*, 2016 IL 118114, ¶ 17; *In re M.W.*, 232 Ill. 2d at 414. Accordingly, we vacate the circuit court's evidence preservation order entered against Kidde.

¶ 80                                             III. CONCLUSION

¶ 81     For the foregoing reasons, we affirm the judgments of the circuit court of Cook County that dismissed plaintiffs' lawsuit against United, Kidde, and the Lewises. However, we vacate the circuit court's evidence preservation order entered against Kidde.

¶ 82     Affirmed in part and vacated in part.