2022 IL App (1st) 210220-U

THIRD DIVISION
June 30, 2022

No. 1-21-0220

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(i).

_____

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| RETREAT PROPERTIES, LLC, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellant, | ) | of Cook County |
| | ) | |
| v. | ) | 20-L-005533 |
| | ) | |
| JOHN UNDERWOOD, and LARRY STANGELAND, | ) | Honorable |
| | ) | Margaret Ann Brennan, |
| Defendants-Appellees. | ) | Judge Presiding |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Gordon and Justice Burke concurred in the judgment.

ORDER

¶ 1    *Held*:  Dismissal of complaint affirmed where Colorado home builders were not subject to specific personal jurisdiction under Illinois' long-arm statute based on unverified allegations that they sent inflated construction invoices to the sole Illinois client of their Colorado construction company.

¶ 2    Retreat Properties, LLC (Retreat Properties or client), an Alaskan company whose principal place of business is in Illinois, hired a Colorado general contractor, Crystal Springs Builders, Inc. (Crystal Springs Builders or builder), to construct a home in Colorado, and later sued the company's owner, Larry Stangeland, and project manager, John Underwood, alleging fraudulent misrepresentation, negligent misrepresentation, and tortious interference with a

prospective economic advantage due to construction defects and overbilling. The circuit court granted Stangeland and Underwood's motion to dismiss for lack of personal jurisdiction, improper venue, and *forum non conveniens*. On appeal, Retreat Properties argues that the Colorado defendants' submission of inflated invoices to an Illinois resident were sufficient minimum contacts with Illinois to satisfy this jurisdiction's long-arm and venue statutes (735 ILCS 5/2-209, 5/2-101 (West 2018)). Retreat Properties also argues that the defendants failed to carry their substantial burden of demonstrating that Colorado's Pitkin County is a more convenient forum than Illinois' Cook County for resolving the dispute.

¶ 3    Retreat Properties' unverified complaint indicated the following. Retreat Properties' principal place of business is in Lincolnwood, Illinois. The members of this limited liability company are Michael Klein and the Klein Family Fund, LLC, and the sole member of that second company is Michael Klein. Klein resides in Cook County. After Retreat Properties and Crystal Springs contracted in October 2017 for the construction of a new residence in Aspen, Colorado, Stangeland and Underwood supervised the day-to-day operations of the project; communicated with Klein, subcontractors, vendors, and the City of Aspen about the project; and submitted pay applications to Retreat Properties to obtain progress payments. During the course of construction, disagreements arose, primarily about the pool. The contract provided for the project to be substantially completed by June 30, 2019, but it had not reached that stage when Retreat Properties filed this suit in May 2020. Retreat Properties claimed that work performed by the pool subcontractors was "incorrect" and "incomplete" and that it would cost $200,000 to $500,000 to remediate the pool's structural and aesthetic aspects and the surrounding patio and landscaping. Retreat Properties also "identified roughly 342 outstanding punch list items to date"

at the Colorado jobsite, such as "incorrect and incomplete" work by subcontractors responsible for the roof, electricity, plumbing, drywall, paint, carpentry, driveway, storm sewers, and landscaping. In Counts I and II, Retreat Properties claimed that the building company's September, October, and November 2019 pay applications were fraudulent misrepresentations about the pool because Stangeland and Underwood were aware that the pool "was in an unacceptable condition" and they were "permitting [their building company, Crystal Springs Builders] to continue repair work on the pool." Retreat Properties also alleged that the pay applications were fraudulent misrepresentations about the roof because the roofing subcontractor "did not have the necessary certifications to complete [its] work." In Counts III and IV (Count III was misdesignated as "Count IV"), Retreat Properties recast what had occurred as "negligent misrepresentations." In Counts V and VI, Retreat Properties contended that by failing to complete the construction by November 2019, the defendants had tortiously interfered with Retreat Properties' reasonable expectations to begin renting the home for $100,000 or more per week, resulting in losses of more than $1 million.

¶ 4     Retreat Properties also simultaneously demanded binding arbitration pursuant to the parties' contract. The arbitration demand was against Crystal Springs Builders, instead of the company's two owners. Although Retreat Properties requested that arbitration take place in Illinois, the American Arbitration Association determined in June 2020 that Colorado was the appropriate "locale." Neither side expressly describes the status of the arbitration; however, the defendants suggest that it is not actively progressing (for instance, they state that the arbitration is "pending").

¶ 5     Stangeland and Underwood filed a section 2-619 motion to dismiss the circuit court

action (735 ILCS 5/2-619 (West 2018)), asserting lack of personal jurisdiction, improper venue, *forum non conveniens*, or, in the alternative, that the court should compel arbitration. In support of the motion, the defendants submitted their own sworn statements, as well as a sworn statement from Robert Kaufmann, who had been Retreat Properties' agent during the timeframe at issue. *See* 735 ILCS 5/1-109 (West 2018) (providing for sworn statements under penalty of perjury).

¶ 6     Stangeland swore to the following. Stangeland started Crystal Springs Builders 23 years ago and was its sole owner until Underwood become a 10% owner in 2018 and a 20% owner in 2019. (Underwood has been with the company for five of its 23 years.) Crystal Springs Builders is a small general contractor that is incorporated in Colorado. Its principal place of business and a registered agent are in Carbondale, Colorado. The company has never had an office or any employees in Cook County, Illinois, and there are no documents or other evidence there. During the 23 years of the company's existence, Crystal Springs Builders, Stangeland, and Underwood have never advertised in Illinois or directed any advertisement or mailings toward any person or business in Illinois, never solicited any business in Illinois, never performed any construction work in Illinois, and never had a client in Illinois, other than Retreat Properties. Crystal Springs Builders, Stangeland, and Underwood did not solicit Retreat Properties or Klein. Rather, in 2017, Retreat Properties' agent, Kaufmann, a Colorado resident, initiated the first contact with Stangeland and Underwood to talk about constructing a home in Aspen. At the time, Kaufmann was interviewing multiple contractors on behalf of his client, whom Stangeland and Underwood later learned was Retreat Properties. None of the contract negotiations occurred in Illinois. Klein signed the contract first on behalf of Retreat Properties, and emailed the agreement to Stangeland, who then signed on behalf of Crystal Springs Builders, in Colorado. All of the in-

person meetings took place in Colorado, with Kaufmann and/or Klein. Stangeland has never traveled to Illinois for business or to meet any client. Stangeland's sworn statement included the names and addresses of the 32 subcontractors who had worked on the Aspen home construction project. All of those entities were located in Colorado. All of the builder's pay applications had been submitted to Kaufmann, who would review them, sometimes ask questions, and sometimes come to the jobsite to inspect the work. Kaufmann would then submit the pay applications to his principal, Klein, for payment to Crystal Springs Builders and the subcontractors.

¶ 7    Project manager Underwood's sworn statement was consistent with Stangeland's sworn statement.

¶ 8    Robert Kaufmann swore as follows. Kaufmann is the president of Kaufmann Construction, Inc., which is a company located in Basalt, Colorado (18.5 miles from Aspen) that provides owner representation services. Klein hired Kaufmann to vet and interview general contractors in Aspen for Klein's home construction project, and Crystal Springs Builders was one of the three companies that Kaufmann contacted. In the contract executed between Retreat Properties and Crystal Springs Builders, Kaufmann is listed as "Owner's representative." Once the project was underway, Kaufmann reviewed the builder's monthly pay applications, made comments about them, visited the Aspen job site (typically about once per pay application) and forwarded the pay applications to Klein for his review and payment. Kaufmann specified, "It is my understanding that Mr. Klein never issued any payment until after I had submitted my comments."

¶ 9    Retreat Properties' response in opposition to the motion to dismiss was unverified. Retreat Properties argued in relevant part that personal jurisdiction should be asserted by the

Illinois circuit court because, "Per the allegations of the Complaint, [the building company and two individual defendants] sent fraudulent payment applications to Retreat [Properties] and Klein in Lincolnwood, Illinois, which Retreat [Properties] and Klein paid from Illinois."

¶ 10    The circuit court granted the motion to dismiss based on findings that the court lacked personal jurisdiction, venue was improper, and that the *forum non conveniens* argument was also persuasive. The court denied the alternative request to compel arbitration pursuant to the contract between Crystal Springs Builders and Retreat Properties, reasoning that the defendants were individuals, Stangeland and Underwood, and their ownership of Crystal Springs Builders did not make them intended third-party beneficiaries who could enforce the terms of the construction contract. This appeal followed.

¶ 11    We begin with the question of jurisdiction. The limits of a trial court's jurisdiction are well established. A court has power to decide a case only when it has both subject matter jurisdiction over the controversy and personal jurisdiction over the parties. See *In re Marriage of Mitchell*, 181 Ill. 2d 169, 174 (1998). Subject matter jurisdiction, which is not disputed in this case, is the court's authority to hear and decide cases of a general class. *Jorgensen v. Berrios*, 2020 IL App (1st) 191133, ¶ 22; *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 335 (2002) (a justiciable matter is "a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests"). Personal jurisdiction is the court's authority to bind a particular party. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). Stangeland, Underwood, and Retreat Properties have briefed the issue of personal jurisdiction.

¶ 12    The *de novo* standard of review governs the question of personal jurisdiction because the circuit court decided the issue based solely on documentary evidence. *Rios v. Bayer Corp.*, 2020 IL 125020, ¶ 16.

¶ 13    It is the plaintiff's burden to establish a *prima facie* basis to exercise personal jurisdiction over the nonresident defendants. *Rios*, 2020 IL 125020, ¶ 16.

¶ 14    An Illinois court has personal jurisdiction over a nonresident defendant when the long-arm statute provides for it and the exercise of jurisdiction is consistent with the due process guarantees of the federal and state constitutions. *Knaus v. Guidry*, 389 Ill. App. 3d 804, 813 (2009); *Insurance Corp. of Ireland*, 456 U.S. 694, 702 (1982); *Madison Miracle Productions, LLC v. MGM Distribution Co.*, 2012 IL App (1st) 112334, ¶ 42 (traditionally, personal jurisdiction over a nonresident has involved a three-part analysis about the Illinois long-arm statute, the due process clause of the United States constitution, and the due process clause of the Illinois constitution).

¶ 15    Pursuant to the long-arm statute, a nonresident corporation is subject to personal jurisdiction if the corporation is " 'doing business' " in Illinois, meaning that it " 'engages in a continuous and systematic course of business in the State.' " *Kostal v. Pinkus Dermatopathology Lab., P.C.*, 357 Ill. App. 3d 381, 385 (2005) (quoting *Kadala v. Cunard Lines, Ltd.,* 226 Ill. App. 3d 302, 314 (1992)); 735 ILCS 5/2-209(b)(4) (West 2018). When a nonresident corporation's " 'affiliations with the State are so continuous and systematic as to render' it 'essentially at home' in the State" then it may be sued on any cause of action, regardless of whether the action arose out of the corporation's contacts with Illinois. *Rios*, 2020 IL 125020, ¶ 19 (quoting *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 919); *Kostal*, 357 Ill. App. 3d at 385

("the 'doing business' standard is quite high but once satisfied, a corporation is considered a resident of Illinois and may be sued on *any* cause of action, *regardless* of whether it arose out of the corporation's contacts with the state"). This is known as "general or all-purpose jurisdiction." *Rios*, 2020 IL 125020, ¶ 19.

¶ 16    General personal jurisdiction contrasts with "specific or case-linked jurisdiction." *Rios*, 2020 IL 125020, ¶ 19. For instance, under the " 'transaction of business' " theory, Illinois will have personal jurisdiction " 'if the corporation transacts any business within the State *and* a cause of action arises from that transaction.' " *Kostal*, 357 Ill. App. 3d at 385 (quoting *Kadala*, 226 Ill. App. 3d at 314); 735 ICLS 5/2-209(a)(1) (West 2018). The long-arm statute also allows Illinois to exert personal jurisdiction when a nonresident commits "a tortious act within this State" and a cause of action arises from that conduct. 735 ILCS 5/2-209(a)(2) (West 2018).

¶ 17    Previously, only the acts described in the long-arm statute could be the basis for asserting personal jurisdiction over a nonresident defendant, but that changed when section (c) was added to the statute in 1989. *Kostal*, 357 Ill. App. 3d at 387. Section 2-209(c) of the long-arm statute "contains a 'catch-all' provision providing that an Illinois court may 'exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States.' " *Morris v. Halsey Enterprises Co.*, 379 Ill. App. 3d 574, 579 (2008) (quoting 735 ILCS 5/2-209(c) (West 2004)). Stated another way, the long-arm statute reaches as far as the federal and State constitutional requirements for due process allow. If due process is satisfied, jurisdiction exists under section 2-209(c) and we need not consider the other sections of the long-arm statute. *Kostal*, 357 Ill. App. 3d at 387. Furthermore, when the defendant has not argued that the State constitution imposes a greater restriction than the federal constitution, then

1-21-0220

we need consider only the federal principles. *Rios*, 2020 IL 125020, ¶ 17.

¶ 18    Federal due process requires courts to consider whether the nonresident defendant had "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Rios*, 2020 IL 125020, ¶ 17 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)).

¶ 19    When determining whether a nonresident defendant has certain minimum contacts, our analysis depends on whether the plaintiff is seeking general personal jurisdiction or specific personal jurisdiction. See *Rios*, 2020 IL 125020, ¶¶ 19-20. For specific personal jurisdiction— the only type of personal jurisdiction that was alleged by Retreat Properties—the defendants' litigation-related "conduct must create a *substantial connection* with the forum State." (Emphasis added.) *Zamora v. Lewis*, 2019 IL App (1st) 181642, ¶ 46. In order to establish there is a "substantial connection," the plaintiff needs to show that "(1) 'the defendant purposefully directed its activities at [Illinois]' and (2) 'the cause of action arose out of or relates to the defendant's contacts with [Illinois].' " *Zamora*, 2019 IL App (1st) 181642, ¶ 46. Under the first element, there must "be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Zamora*, 2019 IL App (1st) 181642, ¶ 46 (internal quotation marks omitted). The "purposeful availment" requirement ensures that "a nonresident defendant is not required to litigate in a forum due to attenuated or random contacts or the unilateral acts of a consumer." *Zamora*, 2019 IL App (1st) 181642, ¶ 46 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "If we determine that a nonresident defendant has purposefully directed its activities at Illinois and the cause of action arose out of or relates to the defendant's

contacts with Illinois, we also must consider whether it is reasonable to require the defendant to litigate in Illinois." *Zamora*, 2019 IL App (1st) 181642, ¶ 48.

¶ 20    When determining whether these defendants purposefully availed themselves of the benefits of doing business in Illinois, relevant considerations may include who initiated the transaction, where the contract was negotiated, where it was formed, and where performance was to take place. *Madison Miracle Productions*, 2012 IL App (1st) 112334, ¶ 57. However, the United States Supreme Court advocates a broad, general approach to a federal minimum contacts analysis. *Madison Miracle Productions*, 2012 IL App (1st) 112334, ¶ 62 (citing *Burger King,* 471 U.S. at 478-79, as reason to reject the defendant's argument that a court should limit its minimum contacts analysis to the initiation, negotiation, formation and contemplated performance of the contract in question).

> "[The United States Supreme Court] '[l]ong ago rejected the notion that personal jurisdiction might turn on "mechanical" tests, [citation] or on "conceptualistic…theories of the place of contracting or of performance," [citation]. Instead, [the court has] emphasized the need for a "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." [citation]. It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.' " *Madison Miracle Productions*, 2012 IL App (1st) 112334, ¶ 55 (quoting *Burger King*, 471 U.S. at 478-79).

¶ 21    In addition, in order to show there is personal jurisdiction in Illinois due to a defendant's tortious conduct in Illinois (*e.g.*, fraud), the plaintiff must allege that the defendant performed an act or omission which caused injury in Illinois and that the conduct was tortious. *Aasonn, LLC v. Delaney*, 2011 IL App (2d) 101125, ¶ 16. When the tortious injury is alleged to be economic rather than physical or emotional, the plaintiff must also allege facts showing that the defendant intended to affect an Illinois interest. *Aasonn*, 2011 IL App (2d) 101125, ¶ 16.

¶ 22    Retreat Properties argues that specific personal jurisdiction exists over Stangeland and Underwood, because, as alleged in the complaint, they submitted fraudulent invoices to an Illinois resident. In our opinion, this argument misapplies the precedent that Retreat Properties relies upon and addresses but one of many relevant contacts. Furthermore, Stangeland and Underwood's uncontroverted sworn statements establish that they did not purposefully establish minimum contacts within Illinois.

¶ 23    Stangeland and Underwood's unrefuted sworn statements specify that they have never transacted business in Illinois, traveled to Illinois for business, advertised in Illinois, or solicited business in Illinois. Retreat Properties was the first and only client of Stangeland and Underwood (or Crystal Springs Builders) that resided in Illinois, and it was Retreat Properties that initiated the construction contract by hiring a Colorado resident, Kaufmann, to find and screen suitable general contractors within the vicinity of Aspen, Colorado. Kaufmann's interview with Crystal Springs Builders and all of the pre-contract negotiations concerning the proposed project occurred in Colorado, not Illinois.

¶ 24    The sworn statements also established that the contract itself was formed in Colorado, as Stangeland was the last person to sign it and was located in Colorado at the time of execution.

*Ideal Insurance Agency, Inc. v. Shipyard Marine, Inc.*, 213 Ill. App. 3d 675, 681 (1991) (where the last act necessary to give validity to the contract is done is the place where the contract is made).

¶ 25    Performance of the construction contract—the real object of the business transaction—was to take place entirely in Aspen and no work was contemplated to be performed in Illinois. "A defendant transacts business in Illinois 'when substantial performance of contractual duties is to be rendered in Illinois or when the defendant invokes the benefits and protections of Illinois law in the contractual relationship.' " *Khan v. Van Remmen, Inc.*, 325 Ill. App. 3d 49, 57 (2001) (quoting *Poplar Grove State Bank v. Powers*, 218 Ill. App. 3d 509, 518 (1991)). As the contracting parties intended, Crystal Springs Builders hired at least 32 Colorado subcontractors to perform tasks on the Aspen building site. The gravamen of the complaint is that Stangeland and Underwood billed for the subcontractors' "incomplete and incorrect" work on the Aspen home's pool, roof, plumbing, heating, ventilation, and air conditioning systems, tile, masonry, drywall, paint, carpentry, electric wiring, landscaping, driveway, and storm sewers. All of these allegations relate to the work that was performed in Colorado, which further underscores Illinois' lack of connection to the lawsuit. During the course of the contract, Stangeland and Underwood did not travel to Illinois or perform any work in Illinois. Klein, the principal of Retreat Properties, did, however, travel to Colorado for several meetings about the performance.

¶ 26    Although this is essentially a dispute about the general contractor's performance of the construction contract in Colorado, the complaint contains vague and strained allegations about the parties' course of dealing, in order to indicate that Stangeland and Underwood purposefully directed activities at Illinois and that the cause of action arose out of or relates to these contacts

with Illinois. As examples:

> "16. Stangeland and Underwood regularly communicated with [Retreat Properties], and particularly with Klein in Illinois, regarding the status of the Property.
>
> * * *
>
> 19. On information and belief, Stangeland and Underwood have each submitted and/or allowed to be submitted Pay Applications certifying progress payments during the course the of [*(sic)*] construction project. Defendants caused these Pay Applications to be transmitted to Illinois.
>
> * * *
>
> 33. In spring 2019, Klein and Defendants had numerous conversations, including phone calls that Defendants made to Klein in Illinois, regarding how to correct the pool defects. Over the course of roughly seven months, *** Underwood and Stangeland continued to submit invoices for payments for [the general contractor] and its subcontractors, including the pool subcontractor, to Retreat [Properties] for the pool work. Defendants submitted all invoices to [Retreat Properties]' Illinois address, and Retreat [Properties] paid those invoices from Illinois. Underwood and Stangeland repeatedly represented to Klein in meetings on site and in phone calls and other communication that work to repair the pool was ongoing and successful."

¶ 27 These allegations lack specific dates and other facts indicating how the allegedly fraudulent pay applications were submitted to Retreat Properties. These allegations were not verified. These allegations were refuted by three specific and unopposed sworn statements which indicated that Retreat Properties' agent in Colorado was the actual recipient of the pay requests.

The court must accept as true any facts stated in affidavits submitted by the defendants that the plaintiff does not contradict by a counter-affidavit, despite any contrary allegations in the plaintiff's complaint. *Khan v. Van Remmen, Inc.*, 325 Ill. App. 3d 49, 56 (2001); *Kutner v. DeMassa*, 96 Ill. App. 3d 243, 247-248 (1981). Stangeland and Underwood's unopposed sworn statements specified that they submitted the pay applications to another person in Colorado, Kaufmann, for his review and follow-up. In turn, Kaufmann's unopposed sworn statement indicated that he received, verified, commented on, and then forwarded the pay applications to Klein and that it was Kaufmann's "understanding that Mr. Klein never issued any payment until after I had submitted my comments." Thus, the record shows that the defendants did not purposefully direct activities at Illinois. Instead, because the defendants were not purposefully establishing contacts with Illinois, the plaintiff had to use a Colorado agent to find and personally interview general contractors, receive and evaluate the subsequent pay applications, and periodically visit the job site during the project in order to verify the construction work.

¶ 28    Another consideration is that the parties purportedly included a Colorado choice-of-law clause in their contract. A choice-of-law provision is considered relevant but not dispositive. *Aasonn*, 2011 IL App (2nd) 101125, ¶ 16.

¶ 29    Thus, the pre-contract interaction, contemplated future consequences, terms of the contract, contract performance, and actual dealings of the parties all indicate that Stangeland and Underwood did not purposefully direct activities into Illinois.

¶ 30    Although not controlling, we note that after Retreat Properties filed a nearly identical complaint against Crystal Springs Builders with the American Arbitration Association, that organization determined that Colorado, not Illinois, was the appropriate "locale" for addressing

the claims.

¶ 31    This case is no different from past decisions affirming the lack of personal jurisdiction over nonresident defendants. In *National Gun Victims Action Council v. Schecter*, 2016 IL App (1st) 152694, another panel of this appellate court found insufficient minimum contacts to exercise jurisdiction over an Ohio company that had agreed to handle an Illinois organization's public relations event in Missouri. *National Gun Victims Action Council*, 2016 IL App (1st) 152694. The Illinois entity had reached out to the Ohio entity for assistance, the terms of their oral agreement were negotiated over the phone or by e-mail, and the performance of the contract was indisputably outside of Illinois. *National Gun Victims Action Council*, 2016 IL App (1st) 152694, ¶¶ 22-24. When it did not appear the Missouri event would go off as planned, the Illinois client rescheduled the event, terminated the public relations contract, and filed suit. *National Gun Victims Action Council*, 2016 IL App (1st) 152694, ¶ 7. Similar to Retreat Properties, the Illinois plaintiff argued that there was personal jurisdiction over the Ohio entity because it had directed Internet communication to the Illinois-based plaintiff knowing that it was an Illinois resident, agreed to provide services for an Illinois resident, was paid for those services, but never actually performed, resulting in damage that occurred in Illinois to the Illinois plaintiff. *National Gun Victims Action Council*, 2016 IL App (1st) 152694, ¶ 7. The court disagreed and held that the Ohio entity's limited e-mail contacts with Illinois were "too random, fortuitous, or attenuated to justify personal jurisdiction." (Internal quotations omitted.) *National Gun Victims Action Council*, 2016 IL App (1st) 152694, ¶ 21. The three Colorado sworn statements negated Retreat Properties' unverified allegations that Stangeland and Underwood communicated with Retreat Properties in Illinois, but we also consider their alleged "regular[]

communica[tions]" and payment requests to Illinois about the construction project progressing in Colorado to be contacts that are too attenuated to Illinois to justify personal jurisdiction in this forum.

¶ 32    Retreat Properties draws our attention to *Aasonn*, 2011 IL App (2d) 101125, a breach of contract and fraud action that is factually distinguishable. The plaintiff was an Illinois consulting company, Aasonn, and the defendants were a New York computer consultant, Delaney, and her company. *Aasonn*, 2011 IL App (2d) 101125, ¶ 4. The claims concerned work product and communications exchanged directly between the parties by telephone, fax, e-mail, Internet messaging, and "Internet connections." *Aasonn*, 2011 IL App (2d) 101125, ¶ 7. The Delaney defendants e-mailed monthly invoices to Aasonn for work that had been performed and they contemporaneously entered the details of those time records into the Aasonn online project management system. *Aasonn*, 2011 IL App (2d) 101125, ¶ 7. Once Aasonn verified what had been entered into its project management system, it electronically paid the New York defendants from its Illinois bank account. *Aasonn*, 2011 IL App (2d) 101125. The Delaney defendants were alleged to have submitted false billing statements for work they did not perform on five of the 20 or so Aasonn projects they handled. *Aasonn*, 2011 IL App (2d) 101125, ¶ 7.

¶ 33    Retreat Properties relies on *Aasonn* for the court's conclusion that the New York consultant and her company were subject to personal jurisdiction by virtue of having "voluntarily entered into a contract creating a substantial connection with Illinois." *Aasonn*, 2011 IL App 101125, ¶ 23. However, the court reached this conclusion only after thoroughly analyzing the parties' pre-contract relationship, the execution of the contract, and where performance was to occur. *Aasonn*, 2011 IL App (2d) 101125, ¶¶ 17-23. For instance, although the New York

consultant did not initiate the contract, she pursued the relationship by making presentations, representing others who would benefit, and leading the contract negotiations. *Aasonn*, 2011 IL App (2d) 101125, ¶¶ 17-18. There was even an Illinois choice-of-law provision in the contract. *Aasonn*, 2011 IL App (2d) 101125, ¶ 24. These and other facts indicated there were sufficient jurisdictional contacts with Illinois. The quality and nature of Delaney's acts indicated that she and her company "purposefully reached out beyond New York to create a deliberate affiliation with an Illinois company from which they derived financial benefits by accepting in excess of 20 projects." *Aasonn*, 2011 IL App (2d) 101125, ¶ 24.

¶ 34    Retreat Properties also argues that because their complaint includes tort claims, any "communications" with Illinois residents, with an intent to affect Illinois residents, are sufficient reason to exercise personal jurisdiction over defendants Stangeland and Underwood. The lack of contacts emanating from Colorado into Illinois is why we reject Retreat Properties' argument that tort law supports specific personal jurisdiction in Illinois. To prevail under this theory, this plaintiff would need to show that the defendants intended to affect an Illinois interest when they allegedly engaged in fraudulent and negligent misrepresentations or tortiously interfered with a prospective economic advantage for the Colorado residential property. *Aasonn*, 2011 IL App (2d) 101125, ¶ 16 (when the tortious injury is alleged to be economic rather than physical or emotional, the plaintiff must also allege facts showing that the defendant intended to affect an Illinois interest); *West Virginia Laborers Pension Trust Fund v. Caspersen*, 357 Ill. App. 3d 673, 678 (2005). The requirement that the tort defendant intended to affect an Illinois interest is another way of stating the requirement under the due process clause that the defendant purposefully availed himself of this forum state's benefits. *Aasonn*, 2011 IL App (2d) 101125,

¶ 16.

¶ 35    The record, as discussed above, indicates that Crystal Springs Builders and its two principals did not reach out beyond Colorado to conduct business with anyone in Illinois. Instead, the pre-contract relationship occurred at Retreat Properties' direction in Colorado and then Retreat Properties and Crystal Springs Builders formed a contract in Colorado for the Colorado contractor to build a Colorado residence. The key interactions between Crystal Springs Builders and Retreat Properties occurred in Colorado and Stangeland and Underwood did not purposefully avail themselves of the benefits of conducting business in Illinois. Retreat Properties did not show that the defendants intended to affect an Illinois interest.

¶ 36    Also, none of the other tort cases that the appellant cites support its assertion of specific personal jurisdiction. For instance, Retreat Properties mistakenly contends that a single piece of deceptive mail into Illinois was sufficient in *Zazove v. Pelikan, Inc.*, 326 Ill. App. 3d 798, 806 (2001), to exert personal jurisdiction over a nonresident corporation. Actually, the opinion indicates the defendant sought and created a robust relationship with this forum. The defendant was a Tennessee corporation, Pelikan-USA, that allegedly duped the plaintiff Illinois fountain pen collector into buying a Pelikan brand limited-edition Toledo M900 fountain pen in the belief that it would become a rare collectible. *Zazove*, 326 Ill. App. 3d at 800-01. The pen seller's extensive and purposeful contacts with this forum included (1) distributing its pens to approximately 27 authorized retailers in Illinois, (2) selling tens of thousands of Pelikan brand writing instruments in Illinois annually, (3) advertising in national periodicals, (4) advertising in local periodicals such as Chicago Magazine, (5) sending marketing brochures to Illinois retailers, and (6) sending direct mail to prospective buyers in Illinois. *Zazove*, 326 Ill. App. 3d 805. This is

far more contact with Illinois than Retreat Properties would have us believe occurred between Pelikan-USA and Illinois. Retreat Properties' reliance on *Zazove* is perplexing because the record before us does not show a comparable effort by Stangeland or Underwood to purposefully direct activities into Illinois.

¶ 37   Another tort case that Retreat Properties mistakenly relies upon is *Dixon v. GAA Classic Cars, LLC*, 2019 IL App (1st) 182416, which involved a Greensboro, North Carolina car dealer and potential buyer in Illinois. The seller allegedly maintained a fraudulent website, sent fraudulent advertisements, and made fraudulent statements in e-mails and phone conversations with an Illinois resident who became interested in a 1973 Ford Bronco that was going up for auction on the internet and by telephone. *Dixon*, 2019 IL App (1st) 182416. The seller's alleged falsehoods about the vehicle's condition induced the Illinois plaintiff to become the highest bidder and have his purchase shipped to Illinois, where he "immediately recognized that [the Bronco] had significant problems" which the car dealer had misstated and/or concealed in its messages and photos. *Dixon*, 2019 IL App (1st) 182416, ¶ 6. The case is not analogous and does not support Retreat Properties' argument that its complaint was erroneously dismissed for lack of personal jurisdiction. The record does not indicate that Stangeland and Underwood created a website and sent advertisements, e-mails, and phone calls into Illinois in order to induce Retreat Properties to hire Crystal Springs Builders (and then subsequently send inflated pay applications). Similarly, in *Kalata v. Healy*, 312 Ill. App. 3d 761, 728 (2000), a Californian used phone calls and mail into Illinois to induce an investor to form a joint venture. And, *Khan v. Gramercy Advisors, LLC*, 2016 IL App (4th) 150435, is another instance of alleged misrepresentations into Illinois to induce investment, this time into tax shelters that were later

disallowed by the Internal Revenue Service.

¶ 38　Nothing comparable to *Dixon*, *Kalata*, or *Khan* occurred here. There are no allegations of a website, advertisement, e-mail, mail, or phone call soliciting Retreat Properties to hire Crystal Springs Builders or its owners to build a home in Colorado. The record indicate that Retreat Properties initiated, negotiated, and entered into a construction contract that was last signed in Colorado. The resulting pay applications as the construction project proceeded in Colorado are what Retreat Properties is disputing, but those invoices are too attenuated to Illinois and not a sufficient basis for Illinois to assert specific personal jurisdiction over the Colorado defendants.

¶ 39　Retreat Properties' other citations are also unhelpful. Retreat Properties relies on *Wesly v. Nat'l Hemophilia Foundation*, 2020 IL App (3rd) 170569, ¶ 24, in which a Peoria, Illinois physician was the target of an allegedly defamatory website posting and e-mails that were sent by a Washington, D.C. physician to a Peoria colleague, a Peoria television station, and others. The tort of defamation occurs where the defamatory statements are published. *Wesly*, 2020 IL App (3d) 170569, ¶ 12.

¶ 40　Given the irrelevance of these Illinois cases, we decline to discuss the federal trial court decisions which Retreat Properties has included in its brief, as federal decisions are, at best, persuasive authority in this State court. *Sears, Roebuck & Co. v. Nat'l Union*, 331 Ill. App. 3d 347, 352 (2002).

¶ 41　The upshot is that Retreat Properties has failed to sustain its appeal. We find that Retreat Properties has not met its burden of showing that Stangeland and Underwood had sufficient contacts with Illinois for purposes of specific personal jurisdiction. In addition, because Retreat Properties is arguing that Illinois has specific personal jurisdiction, Retreat Properties has the

additional burden of demonstrating that its various claims arise out of or relate to Stangeland and Underwood's contacts with Illinois. Since we have found that Stangeland and Underwood did not have sufficient contacts with Illinois for purposes of exerting personal jurisdiction, we need not analyze whether Retreat Properties' claims arose out of or were related to Stangeland and Underwood's contacts with Illinois, nor do we need to determine whether it would be reasonable to require the defendants to litigate in this forum. *Madison Miracle Productions*, 2012 IL App (1st) 112334, ¶ 98.

¶ 42    In its reply brief, Retreat Properties argues for the first time that after its relationship with Crystal Springs Builders broke down, Stangeland and Underwood satisfied the minimum contacts requirement when they "transmitted demand letters with intentionally inaccurate statements, including false certifications for payment, directly to Plaintiff in Illinois" and "placed numerous phone calls to Plaintiff in Illinois in furtherance of Defendants' fraudulent and inaccurate assertions." *Knaus v. Guidry*, 389 Ill. App. 3d 804, 815 (2009) (a party may not raise an argument for the first time on appeal). Points that are not argued in the opening brief are forfeited and shall not be raised in the reply brief. Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2017); *Robertsson v. Misetic*, 2018 IL App (1st) 171674, n.3 (finding forfeiture in part because the appellant did not develop an argument until the reply brief). In any event, the argument is unpersuasive because Retreat Properties fails to cite any authority in which efforts at dispute resolution were relevant in a minimum contacts analysis about the dispute.

¶ 43    We conclude that Retreat Properties has not shown that the Colorado construction project invoices that Retreat Properties wants to litigate are a proper basis for Illinois to exert specific personal jurisdiction over the Colorado defendants. Defendants Stangeland and Underwood do

not have sufficient minimum contacts with Illinois for the purposes of asserting personal jurisdiction against them.

¶ 44    Furthermore, we hold that the issue of specific personal jurisdiction is dispositive of the appeal and that we need not reach Retreat Properties' other arguments that venue and *forum non conveniens* are grounds for reversal.

¶ 45    The circuit court's dismissal of the complaint is affirmed.

¶ 46    Affirmed.