2026 IL App (1st) 241469-U

SIXTH DIVISION

February 20, 2026

No. 1-24-1469

**NOTICE**:  This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| JURISTECH ASSOCIATES, LTD, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 23 L 7208 |
| | ) | |
| FORDHARRISON LLP, | ) | Honorable |
| | ) | Catherine A. Schneider, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE C.A. WALKER delivered the judgment of the court.
Justices Pucinski and Gamrath concurred in the judgment.

## ORDER

¶ 1    ***Held:***    The circuit court's order granting defendant FordHarrison LLP's motion to dismiss for lack of personal jurisdiction is affirmed because Illinois lacks either general or specific personal jurisdiction over FordHarrison.

¶ 2    Plaintiff-Appellant Juristech Associates, Ltd. (Juristech) appeals from the circuit court's dismissal of its complaint alleging breach of contract against defendant-appellee FordHarrison LLP (FordHarrison), arguing the court erred by finding Illinois lacked either general or specific personal jurisdiction over FordHarrison. We affirm.

¶ 3                                          BACKGROUND

¶ 4    Juristech filed their complaint on July 19, 2023. As relevant here, Juristech, a legal recruiter, identified itself as an Illinois corporation that "performs its services from its office in Illinois" and "rarely if ever has any reason to physically visit any other [s]tate" because its business focuses on the use of "telephone, internet and emails." FordHarrison, as alleged by Juristech, was a "Georgia Limited Liability Partnership with its principal place of business in Georgia" that "maintained an office and practiced law in Chicago, Cook County." Regarding jurisdiction, Juristech alleged, "This Court has personal jurisdiction over FordHarrison because it maintains an office in Illinois and resides in Illinois," and "regularly, systematically and continuously conducts business in Illinois, owns, uses or possesses real estate in Illinois, regularly, systematically and continuously makes or performs contracts substantially connected to Illinois and has otherwise established the requisite minimum contacts with Illinois for purposes of general personal jurisdiction." It continued that personal jurisdiction was also appropriate under Section 2-209 of the Illinois Code of Civil Procedure ("long-arm statute") (735 ILCS 5/2-209 (West 2022)) because FordHarrison (1) "initiated" a transaction with an Illinois corporation by directing communication into Illinois; and knew that (2) Juristech was an Illinois company that would both perform its tasks and collect its fee in Illinois; and (3) any dispute could be litigated in Illinois courts.

¶ 5    Respecting the transaction at issue [hereinafter "the O'Donnell hire"], Juristech alleged that in August 2020, attorney Ryan O'Donnell contacted Juristech, and requested that they place him,

along with one to three other attorneys, in a position at a new firm. Juristech then contacted FordHarrison in a September 9, 2020 email, which also generally offered to coordinate contact with one to three unnamed attorneys. After subsequent communication which specifically identified Ryan, FordHarrison, through partner Todd Aidman, agreed to pay a fee if it hired Ryan and "any group of attorneys…hired by FordHarrison *** substantially contemporaneous[ly]" with Ryan, based on a percentage of the first year's compensation. FordHarrison later hired Ryan and two of his colleagues, Bud O'Donnell (Ryan's father) and Michael Spagnola, but did not immediately inform Juristech. Juristech eventually learned of the hires and requested payment for all three, but FordHarrison only agreed to pay a fee for Ryan, which Juristech alleged constituted breach of contract (and gave rise to a claim for quantum meruit in the alternative).

¶ 6    On August 25, 2023, FordHarrison moved to dismiss for lack of personal jurisdiction and failure to state a claim under sections 2-615 and 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2022)). In the motion, FordHarrison claimed Juristech "entered into [a contract] with a FordHarrison partner located in Tampa, Florida under which [Juristech] proposed to place a Connecticut-based attorney with FordHarrison's Hartford, Connecticut regional office." FordHarrison maintained their headquarters and principal place of business was in Atlanta, Georgia. It attached Aidman's affidavit, in which he averred that FordHarrison employed approximately 150 attorneys in 26 total offices across 16 states, including a "regional office in Chicago, Illinois, which has fewer than ten total attorneys." He further averred the O'Donnell hire began when Juristech "sent an unsolicited email" to Shane Munoz, an attorney in the Tampa, Florida office.

¶ 7    FordHarrison argued that the circuit court lacked either general or specific personal jurisdiction. On general jurisdiction, it cited the standard for corporations explained in *Daimler*

*AG v. Bauman*, 571 U.S. 117 (2014), and contended it had insufficient contacts with Illinois per that standard. It noted there could be exceptional cases where a business entity's contacts with a forum rendered it "at home" in the forum such that general jurisdiction could attach, but contended FordHarrison's contacts through its regional Chicago office did not suffice. On specific jurisdiction, FordHarrison argued Juristech's claims did not arise from FordHarrison's contact with Illinois.

¶ 8    Juristech filed an amended complaint on January 10, 2024. The amended complaint included new allegations, specifically that eight partners of FordHarrison were domiciled in Illinois, meaning FordHarrison itself was domiciled in Illinois because, "The domicile of a partnership consists of every state in which each partner has his or her domicile." Juristech further alleged that "a few years prior to 2020," Aidman called Juristech and asked for recruitment assistance in Chicago. Juristech attached the fee agreement and two email chains as exhibits. The email chain demonstrated that the O'Donnell hire began when Jacob Kokoris of Juristech emailed Munoz on September 9, 2020, writing, "If you received this email, thank you for the opportunity to communicate with you. I am a national recruiter representing a group of 2 (possibly 3) labor and employment attorneys in the greater New York area. *** This is a general email. To learn more specifics, please contact me directly***. This is Jacob Kokoris from Juristech Associates, Ltd."

¶ 9    FordHarrison again moved to dismiss, arguing that general personal jurisdiction over multi-state law firms organized as LLPs did not depend on the citizenship of individual partners, nor did the fact that FordHarrison had a Chicago office make it "at home" in Illinois. It further contended that any pre-2020 contacts were irrelevant to specific personal jurisdiction because those contacts were unrelated to the transaction underlying Juristech's claims.

¶ 10    Juristech responded, identifying several alleged contacts that FordHarrison had with Illinois arising from the O'Donnell hire. It attached the affidavit of Nicholas Kokoris, Juristech's owner, who averred in relevant part that FordHarrison initiated the transaction at issue "by first reaching out to Juristech in Illinois and requesting it to perform its services in Illinois in furtherance of FordHarrison's interests," and that Juristech then "regularly and often offered many partner candidates to FordHarrison." Regarding the O'Donnell hire specifically, Nicholas averred that in August 2020, Ryan requested Juristech to help him and up to three other partners find a new law firm. On September 9, 2020, Juristech emailed FordHarrison regarding Ryan and potentially two other labor and employment attorneys in the New York area, that could join FordHarrison's Connecticut office. The next day, Aidman responded by email, stating "We would be interested in learning more about these candidates." Juristech then forwarded Ryan's information, and "in response to Juristech's referral, Aidman at FordHarrison agreed to a preliminary conversation" with Ryan and "expressly acknowledge[ed] that the referral was for multiple candidates." On September 14, 2020, Juristech sent FordHarrison its fee agreement, which FordHarrison "sought to negotiate." Juristech ultimately agreed to a new fee agreement as amended by FordHarrison, who then breached that agreement.

¶ 11    On June 20, 2024, the circuit court granted FordHarrison's motion and dismissed the amended complaint for lack of personal jurisdiction. The court explained, in relevant part, that it lacked general jurisdiction over FordHarrison because, "Whether the partners of FordHarrison's Chicago office are domiciled in Illinois is irrelevant, as the test for general personal jurisdiction of a [LLP] is whether it is 'at home' in Illinois." The court found FordHarrison was not at home in Illinois because it was "not organized in Illinois, does not maintain its principal place of business in Illinois, and its Chicago office houses fewer than 10% of the attorneys they employ."

¶ 12　As to specific jurisdiction, the circuit court explained the relevant factors were "(1) who initiated the transaction, (2) where the contract was formed, and (3) where performance of the contract was to take place." It found each factor favored FordHarrison because Juristech initiated the transaction by contacting FordHarrison about Ryan, notwithstanding any previous relationship; the contract was formed outside of Illinois because Aidman's signing was the last relevant act of contract formation; and FordHarrison's performance occurred outside of Illinois.

¶ 13　This appeal followed.

¶ 14　　　　　　　　　　　　　　JURISDICTION

¶ 15　The circuit court granted FordHarrison's motion to dismiss on June 20, 2024, and Juristech filed its notice of appeal on July 17, 2024, giving this court jurisdiction pursuant to article VI, section 6 of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017).

¶ 16　　　　　　　　　　　　　　ANALYSIS

¶ 17　On appeal, Juristech claims the circuit court erred by granting the motion to dismiss because FordHarrison was subject to both general and specific personal jurisdiction in Illinois.

¶ 18　When a nonresident defendant moves to dismiss a complaint based on lack of personal jurisdiction, the burden is on the plaintiff to establish a *prima facie* basis for personal jurisdiction. *Aspen American Insurance Co. v. Interstate Warehousing, Inc.*, 2017 IL 121281, ¶ 12. The circuit court may consider the "uncontroverted pleadings, documents, and affidavits, as well as any facts asserted by the defendant that have not been controverted by the plaintiff." *Madison Miracle Productions, LLC v. MGM Distribution Co.*, 2012 IL App (1st) 112334, ¶ 34 (quoting *Cardenas Marketing Network, Inc. v. Pabon*, 2012 IL App (1st) 111645, ¶ 28). When the court makes its decision "solely on such documentary evidence," our review is *de novo*. *Id.*

¶ 19    Illinois' long-arm statute enumerates conduct that a party may engage in that could subject that party to suit in Illinois. 735 ILCS 5/2-209 (West 2022). The statute also contains a catchall provision which permits Illinois courts to "exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." *Id.* § 2/209(c). The Illinois Supreme Court left open the possibility that a case could present a situation where the Illinois Constitution's due process requirements diverge from the federal requirements, but neither party argues this is such a case, and Juristech does not base its arguments on any specific provision of the long-arm statute. *Rios v. Bayer Corp.*, 2020 IL 125020, ¶ 17. Accordingly, we will analyze this case based on the federal due process requirements for personal jurisdiction. *Id.*

¶ 20    "The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). A state may exercise personal jurisdiction over a nonresident defendant only when the defendant has "minimum contacts" with the state such that the exercise of personal jurisdiction is consistent with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v Meyer*, 311 U.S. 457, 463 (1940)). There are two types of personal jurisdiction: general and specific. *Rios*, 2020 IL 125020, ¶ 19. Juristech argues both apply.

¶ 21                                    **I. General Jurisdiction**

¶ 22    General jurisdiction involves the exercise of jurisdiction over a person or organization, regardless of where the relevant conduct occurred, because the defendant has a qualifying relationship with the forum.

¶ 23    We begin with a review of the law of general jurisdiction governing corporations. A state may typically exercise general personal jurisdiction over a corporation if it is the state of

incorporation, or when the corporation's principal place of business is in that state. *Daimler*, 571 U.S. at 137. Outside of these scenarios, a state may exercise general jurisdiction over a corporation only under the rare circumstances where that corporation's operations within the state are continuous, systematic, and of a nature that the corporation could be considered "at home" in that State. *Rios*, 2020 IL 125020, ¶ 19 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). A corporation cannot be "at home" in every state in which it operates. *Daimler*, 571 U.S. at 139 n.20.

¶ 24    If we apply the general jurisdiction standard for corporations to FordHarrison in the present case, the record shows that the exercise of general jurisdiction in Illinois would be improper, and it is not particularly close. FordHarrison was organized in Georgia, and its Chicago office, with fewer than 10 attorneys, contains a small fraction of its business nationwide, which includes 26 offices across 16 states. This record obviates any contention that FordHarrison's contacts with Illinois are so prominent and pervasive that it could be considered "at home" in Illinois. See *Aspen*, 2017 IL 121281, ¶ 16.

¶ 25    Juristech's responds that the general jurisdiction standard for corporations does not apply to partnerships, including limited liability partnerships like FordHarrison. Instead, Juristech argues, partnerships are subject to general personal jurisdiction in every state where a partner is domiciled, which here would include Illinois because the partners working out of FordHarrison's Chicago office are domiciled in Illinois. Juristech does not cite any cases that directly state this proposition, from Illinois or any other forum. Instead, they argue their position is the logical extension of the United States Supreme Court's decisions in *Carden v. Arkoma Associates*, 494 U.S. 185 (1990), and *Daimler*.

¶ 26   In *Carden*, the Court found that for purposes of determining diversity of citizenship for federal subject matter jurisdiction, a partnership is considered a citizen of each state in which one of its partners is domiciled. *Carden*, 494 U.S. at 195-96. This included both general and limited partners. *Id.* In so finding, the Court acknowledged that corporations are unique among business organizations in that the law treats corporations as a citizen of a particular state for diversity purposes, but left it to Congress to determine if other entities besides corporations should be similarly treated. *Id.* at 187-89, 196. The Court noted that its decision was limited to defining diversity of citizenship, and was a technical decision based on precedent and legislative interpretation that did not consider fairness. *Id.* at 196-97.

¶ 27   In *Daimler*, as relevant here, the Court did not discuss subject matter jurisdiction in the context of diversity of citizenship, and addressed only general personal jurisdiction over corporations. First, the Court noted that for corporations, the place of incorporation and principal place of business are "paradigm" bases for general jurisdiction. *Daimler*, 571 U.S. at 137. It then explained that besides forums meeting those criteria, general jurisdiction may be appropriate (per *Goodyear*) in a forum where a corporation has continuous and systematic contacts that are of such a nature they render the corporation "at home." *Id.* at 137-39. The Court explained that continuous and systematic contacts are not sufficient independently, and the additional requirement that they render the corporation "at home" was a higher bar to clear. *Id.*

¶ 28   The parties also debate at length the impact on this case of the unpublished order in *Page v. Democratic National Committee*, 2020 WL 8125551 (N.D. Ill. Aug. 17, 2020) (*aff'd as modified*, 2 F.4th 630 (7th Cir. 2021)).[1] In *Page*, the court considered whether the law firm Perkins Coie

---

[1] The 7th Circuit affirmed based on lack of subject matter jurisdiction, and thus did not reach the general personal jurisdiction issue. We note, however, that contrary to Juristech's representations in its

LLP, whose third largest office was in Chicago, was subject to general personal jurisdiction in Illinois. *Page*, 2020 WL 8125551, at *1-2. The court used the standard for corporations as explained in *Daimler* to find there was no general jurisdiction. *Id.* at *2. In so finding, the *Page* court rejected the plaintiff's argument that general jurisdiction was appropriate because a subsidiary of Perkins Coie LLP, Perkins Coie LLC, was "an Illinois LLC with its principal office in Chicago, whose membership in the Perkins Coie partnership is indicative of continuous and systematic contacts with Illinois." *Id.* The court wrote, "this emphasis suggests that general jurisdiction hinges on the individual citizenship of Perkins Coie's limited liability partners. It does not. Rather, the test is whether Perkins Coie is 'at home' in Illinois." *Id.* (citing *Mizrachi v. Ordower*, 2019 WL 918478, at *2 (N.D. Ill. Feb. 25, 2019)). The *Page* court cited *Mizrachi* for this proposition, in which the court also applied the standard for corporations to a law firm organized as an LLP, albeit without analyzing why the standard should apply. *Mizrachi*, 2019 WL 918478, at *2.

¶ 29    We find the proper standard to determine whether FordHarrison was subject to general jurisdiction in Illinois in this matter was the standard for corporations explained by the Supreme Court in *Goodyear* and *Daimler*, and, accordingly, affirm the circuit court's finding that FordHarrison was not subject to general personal jurisdiction in Illinois. FordHarrison, like Perkins Coie LLP in *Page*, is a large, multi-state entity with an obvious forum outside of Illinois where it would be subject to general jurisdiction (Georgia). For FordHarrison to be subject to general jurisdiction in another forum outside of Georgia, we conclude that traditional notions of fairness dictate that its contacts with the proposed forum be analyzed consistent with the principle that a

brief, the 7th Circuit did not reject the district court's reasoning on personal jurisdiction, and in fact stated it had "no reason to question" that reasoning. *Page*, 2 F. 4th at 633, 639.

business entity operating in multiple forums at any given time cannot fairly be subject to general jurisdiction in each of those forums, but only in such additional forums where its contacts are of a nature as to render it "at home." *Aspen*, 2017 IL 121281, ¶ 19 (citing *Daimler*, 571 U.S. at 139 n.20).

¶ 30    Because this is a personal jurisdiction issue, and not the mechanical interpretation of statutes the Court performed in *Carden*, fairness is our central concern. And whether a multi-state entity is a traditional "corporation," or organized as an LLC or LLP, does not substantively alter the fairness analysis. Instead, the commonality between corporations and LLPs like FordHarrison and Perkins Coie is much more relevant—specifically, is it fair to force a business entity to choose between expanding beyond the borders of its home state, or protecting itself from open-ended litigation in any new forum it operates? This concern maintains across any type of business entity, so long as it is capable of expansion. Such a rule could discourage economic growth and create unrealistic demands on legal departments are obvious understatements, but more importantly, such a conception is counter to the Supreme Court's instructions on how to apply federal due process law on personal jurisdiction. The *Daimler* court explained, "As this Court has increasingly trained on the "relationship among the defendant, the forum, and the litigation," *i.e.* specific jurisdiction, general jurisdiction has come to occupy a less dominant place in the contemporary scheme." (Internal quotation omitted.) *Daimler*, 571 U.S. at 132-33. In other words, the focus of today's jurisprudence is that personal jurisdiction is centered in the forum where the defendant engaged in the conduct that gave rise to the claims, and overarching conceptions of jurisdiction are now disfavored and apply only in very specific circumstances—circumstances absent in this case.

¶ 31    Juristech argues that this finding is counter to *Carden's* rule that a partnership is domiciled in each state where an individual partner is domiciled. See *Carden*, 494 U.S. at 195-96. This

11

argument ignores the fundamental distinction the Supreme Court emphasized on multiple occasions in the *Carden* opinion itself: diversity is a statutory creation of Congress and is based on who and who is not a "citizen" in that specific context, while personal jurisdiction is a due process issue analyzed using principles of fairness. *Id.* at 196; see also *Franco v. Chobani, LLC*, 789 F. Supp. 3d 584, 601 (N.D. Ill. May 29, 2025) (citing *Duncanson v. Wine and Canvas IP Holdings LLC*, 2017 WL 6994541, at *2). Though LLPs and LLCs are not technically citizens as a collective, like corporations, there can be no reasonable dispute that such organizations, as with corporations, can have different levels of "contacts" with different forums. The fact that in the law firm context it is a "partner" taking the action instead of a corporate vice-president does not change the fundamental analysis of whether the organization as a whole had sufficient contacts with a forum such that the forum's exercise of jurisdiction is fair. See *World-Wide Volkswagen*, 444 US. at 291 ("The concept of minimum contacts, in turn, can be seen to perform two related, but distinguishable, functions. It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system."). We agree with the *Page* court's application of this logic and decision to apply the *Daimler* "at home" standard, and not the diversity jurisdiction standard as described in *Carden*.

¶ 32    Juristech's next contention is that *Daimler* made the "at home" consideration for general personal jurisdiction synonymous with the test for citizenship in the subject matter jurisdiction context, and a partnership is only a "citizen" insofar as its partners are citizens. *Daimler*, 571 U.S. at 137. This argument impermissibly extends *Daimler* far beyond any precedential intention that can be gleaned from the opinion. Juristech points to nothing in *Daimler* supporting the contention that any multi-state business entity is subject to general jurisdiction in every state in which it

12

operates unless it is a corporation. The language highlighted by Juristech only delineates black letter law regarding where a corporation specifically may be subject to general jurisdiction as compared to an individual. *Id.* Moreover, in describing the contrast between an individual and corporation for general jurisdiction, the *Daimler* court explicitly discussed that the primary concern beyond domicile is the pervasiveness of contacts rendering the person or corporation at issue "at home." That a partnership is not a technical "citizen" like a corporation does not render it fundamentally incapable of having significant contacts with a forum that make it fairer for it to be subject to general jurisdiction in one forum versus another. It might well be fair to apply the conception Juristech advocates to a small-scale partnership consisting of a few individuals, each in separate states, but it is not for a multi-state law firm like Perkins Coie and FordHarrison.

¶ 33 Finally, Juristech argues *Page* and *Mizrachi* should be disregarded because the courts there did not consider the individual partner domicile theory. We reject this argument for two reasons. First, respecting *Page*, the argument is invalid because the record shows the parties briefed the issue, and the court explicitly considered and rejected the theory in its order. *Page*, 2020 WL 8125551, at *2. Second, and most importantly, the mode of analysis used by the *Page* and *Mizrachi* courts, or any other courts that have considered this issue, does not change the fact that *Carden* specifically limited its rule to the diversity context. *Carden*, 494 U.S. at 196-97.

¶ 34                                    **II. Specific Jurisdiction**

¶ 35 Juristech next contends that FordHarrison is subject to specific jurisdiction. In analyzing specific jurisdiction, the court considers whether the "the defendant purposefully directed [its] activities at residents of the forum" and if "the litigation results from alleged injuries that arise out of those activities." *Rios*, 2020 IL 125020, ¶ 20 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985)). For jurisdiction on this basis to accord with due process, the defendant must have

purposefully availed itself of the rights and protections of Illinois law in engaging in the conduct from which the plaintiff's claim arises. *Russell v. SNFA*, 2013 IL 113909, ¶ 42 (citing *Burger King*, 471 U.S. at 474-75). It is the defendant's conduct, not the plaintiff's, which a court analyzes in determining specific jurisdiction. *Walden v. Fiore*, 571 US 277, 284-85 (2014); *Madison*, 2012 IL App (1st) 112334, ¶ 70.

¶ 36    Illinois courts consider certain factors to determine specific jurisdiction in the context of a contract dispute, though we note the United States Supreme Court has emphasized that no defined test should govern a court's consideration of the nature of a defendant's contacts in a given case. *Burger King*, 471 U.S. at 478-79. Accordingly, Illinois courts may weigh factors including, but not necessarily limited to, (1) which party initiated the transaction, (2) where the negotiations occurred, (3) where the contract was formed, and (4) where performance was to take place. *Madison*, 2012 IL App (1st) 112334, ¶¶ 57-62. Illinois courts may also consider the future consequences of the contract, its terms, and the parties' actual course of dealing, when analyzing specific jurisdiction in this context. *Aasonn, LLC v. Delaney*, 2011 IL App (2d) 101125, ¶ 16.

¶ 37    The existence of a contract between an Illinois resident and a non-Illinois resident defendant is not sufficient on its own to subject that defendant to specific jurisdiction. *Cardenas*, 2012 IL App (1st) 111645, ¶ 36. Additionally, in the context of business conducted remotely, exchanges of correspondence (such as telephone calls or emails) with someone in Illinois is generally not enough to support jurisdiction. *Ideal Insurance Agency, Inc. v. Shipyard Marine, Inc.*, 213 Ill. App. 3d 675, 682 (1991).

¶ 38    We begin with a consideration of two cases that analyzed minimum contacts in similar contexts to this matter, *National Gun Victims Action Council v. Schecter*, 2016 IL App (1st) 152694, and *Zamora v. Lewis*, 2019 IL App (1st) 181642. In *Schecter*, this court considered

whether the defendants (Schecter (an Ohio resident) and his company Libertas, LLC, (an Ohio-organized LLC)) had minimum contacts with Illinois arising from its interactions with the plaintiff Council, an Illinois not-for-profit corporation, in relation to a breach of contract claim for a failed venture in Kansas City, Missouri. *Schecter*, 2016 IL App (1st) 152694, ¶¶ 3-4. The Council reached out to Shecter in 2014 to handle public relations for the event. *Id.* ¶ 4. Previously, in May 2013, Schecter contacted the Council to offer services in a matter unrelated to the Kansas City event. There was no dispute that the defendants' conduct relating to the Kansas City event occurred outside of Illinois. Schecter sent emails to the Council, which the Council received in Illinois, and the parties also had "numerous  phone calls." *Id.* ¶ 6.

¶ 39    The circuit court dismissed the complaint for lack of personal jurisdiction, and this court affirmed. *Id.* ¶¶ 11-12, 28. The *Schecter* court noted, in relevant part, that "infrequent email communication" did not justify personal jurisdiction. *Id.* ¶ 21. It further noted that it was the Council who initiated the relevant transaction, and the fact that there was a previous interaction initiated by the defendants did not alter that consideration. *Id.* ¶  22. On the importance of where the contract was formed, the court stated, "Nothing about the transaction between plaintiffs and defendants was required to take place in Illinois in order for the contract to be possible" and "Also weighing against plaintiffs is the fact that the alleged contract was formed through telephone or email communications, not in-person negotiation within Illinois." *Id.* ¶ 23. It summarized, "Our decision hinges on the fact that defendants did not purposefully direct their efforts at Illinois residents. Rather ***, plaintiffs just happened to be residents of Illinois with whom defendants entered into a transaction unconnected with the state." *Id.* ¶ 25.

¶ 40    In *Zamora*, the court considered the nature of an online transaction involving AirBNB, an "online marketplace" for home rentals. *Zamora*, 2019 IL App (1st) 181642, ¶ 3. The defendants

Trina and Troy Lewis listed their Maine home on AirBNB's website as available for rental on certain dates. Julie Gilbert messaged Trina about the home, and ultimately booked it for a stay in October 2016. *Id.* ¶¶ 4-5. During the stay, a fire in the home tragically caused the deaths of both Gilbert's boyfriend, Baldomero Zamora, and Gilbert's son. *Id.* ¶ 5. Zamora's family sued multiple parties, including the Lewises. *Id.* at ¶ 6. The Lewises moved to dismiss, arguing Illinois lacked personal jurisdiction over them because they had no contact with the state and did not target Illinois residents specifically in listing their Maine home as generally available for rental. *Id.* ¶¶ 14-15. Plaintiffs responded that the approval process for the booking constituted sufficient contacts with Illinois to subject the Lewises to specific jurisdiction in Illinois. *Id.* ¶¶ 16-18.

¶ 41 The circuit court granted the motion to dismiss, and this court affirmed, explaining:

"The Lewises knowingly rented their house to an Illinois resident, and while this created a commercial relationship with an Illinois resident, it was a brief, one-time occurrence that was created randomly and fortuitously by Gilbert and did not obligate the Lewises to any obligations in Illinois or further obligations with respect to Gilbert beyond the two-day rental period. This tenuous connection to Illinois does not satisfy the minimum contacts required to satisfy due process." *Id.* ¶ 64.

¶ 42 Here, the circuit court did not engage in any independent fact finding, meaning it had to resolve any conflicts in the pleadings and affidavits in Juristech's favor, but could accept any uncontradicted evidence from FordHarrison. *Madison*, 2012 IL App (1st) 112334, ¶ 34. With these strictures in mind, the relevant record for the specific personal jurisdiction analysis shows that Juristech is an Illinois company, while FordHarrison is a law firm organized as an LLP in Georgia, also its principal place of business. FordHarrison employs approximately 150 attorneys and has 26 offices across 16 states, with a Chicago office with fewer than ten attorneys, including eight

partners domiciled in Illinois. Juristech and FordHarrison had a general business relationship that predated the O'Donnell hire. In September 2020, Juristech emailed Shane Munoz, of FordHarrison's Tampa, Florida office, and offered to coordinate contact with two or three attorneys as potential new hires in the New York area. Aidman, a FordHarrison partner also in Tampa, Florida, responded to the email and requested more information. Juristech sent Aidman the information on Ryan via another email, along with a proposed fee arrangement. Aidman responded with an amended fee arrangement to which Juristech agreed.

¶ 43    At some later point, FordHarrison hired Ryan, Bud, and Spagnola, but did not inform Juristech. The hires were for FordHarrison's Connecticut office, and no part of the interview or hiring process occurred in Illinois. When Juristech learned of the hires, it requested payment from FordHarrison for all three attorneys. FordHarrison responded by offering payment for Ryan alone, prompting Juristech to file its complaint in the circuit court of Cook County, Illinois. Juristech was at all times conducting its business from its office in Chicago, meaning any electronic or telephonic communication it received from FordHarrison was received in Illinois. Its bank, to which it requested FordHarrison to remit payment, was also in Illinois. There is no allegation that Aidman or any other person related to FordHarrison that was involved in the O'Donnell hire was ever physically in Illinois.

¶ 44    Based on this record, we find FordHarrison's contacts with Illinois related to the O'Donnell hire were insufficient to establish specific jurisdiction. The fact that Juristech was in Illinois does not in and of itself lend jurisdiction over FordHarrison simply because it entered a contract with Juristech knowing it was located in Illinois. *Cardenas*, 2012 IL App (1st) 111645, ¶ 36. Instead, Juristech had to set forth contacts that FordHarrison had with the forum, not just to Juristech, and show that those contacts gave rise to Juristech's claim, to establish specific jurisdiction in this case.

*Walden*, 571 U.S. at 284-86; *Rios*, 2020 IL 125020, ¶ 29. Juristech alleges no such conduct, and as such, it cannot establish minimum contacts.

¶ 45    An analysis of FordHarrison's contacts, or lack thereof, using the general framework Illinois courts have considered in contract cases is the most helpful framework for our analysis, though we acknowledge it is not a strict test to always be applied in such cases. *Burger King*, 471 U.S. at 478-79. First, the factor of which party initiated the transaction weighs in favor of FordHarrison. The exhibits to the amended complaint demonstrate that Juristech, without any prompting, cold-contacted FordHarrison to gauge interest in hiring attorneys in the New York area. After FordHarrison affirmed its interest, Juristech sent Ryan's information. Thus, Juristech initiated the transaction by directing its conduct outside of Illinois to FordHarrison in its Tampa, Florida office. Juristech argues its contacts with FordHarrison predating the September 9, 2020 email are relevant to this consideration, but the *Schecter* court rejected this very reasoning, and we agree with their analysis.. See *Schecter*, 2016 IL App (1st) 152694, ¶¶ 4, 22.

¶ 46    The next two factors are (a) where the contract was negotiated and (b) where it was executed. The circuit court concluded the contract was formed in Georgia, but the record shows Juristech claims FordHarrison emailed them an amended version of the fee agreement, and Juristech then agreed to the proposed changes to finalize the contract. FordHarrison counters that the record does not definitely show where the contract was formed. Given our posture here, we must resolve this dispute in Juristech's favor, and assume for purposes of this analysis that the act which finalized the contract occurred in Illinois. *Madison*, 2012 IL App (1st) 112334, ¶ 34.

¶ 47    Even with this understanding, however, we find that these factors ultimately do not significantly support Juristech's position. As the *Schecter* court explained, the forum in which a final signature is electronically applied to a remotely negotiated contract is much less impactful in

a minimum contacts analysis because the defendant did not purposefully avail themselves of anything specific to the forum. *Schecter*, 2016 IL App (1st) 152694, ¶ 23. Specifically, the *Shecter* court stated, "Plaintiffs here just happen to be Illinois residents. Nothing about the transaction between plaintiffs and defendants was required to take place in Illinois for the contract to be possible. Plaintiffs could have communicated via telephone or email from anywhere in the world." *Id.* Similarly, that Juristech opened FordHarrison's emails in Illinois, and then acted in Illinois regarding them, constitutes their own contacts with Illinois as a forum, not FordHarrison's, and thus provides minimal aid for Juristech's claim of specific jurisdiction. If the contract had been negotiated in person in Illinois, or FordHarrison attorneys had to take some in-person action in Illinois to finalize the agreement, this analysis may have been different, but that is not the record.

¶ 48    Finally, the location of FordHarrison's performance was outside of Illinois, and involved no contact with the state, making this factor weigh heavily in favor of finding no specific jurisdiction. FordHarrison's performance of the contract entailed the interview process and hiring of Ryan, Bud, and Spagnola in Connecticut. FordHarrison's Illinois attorneys had nothing to do with it. Neither Ryan, Aidman, nor any personnel from FordHarrison's Connecticut office ever stepped foot in Illinois in relation to the O'Donnell hire. The performance of the contract was unrelated to Illinois, except for any subsequent electronic communication with, and payment to, Juristech which, as described above, does not constitute its own sufficiently meaningful contact with Illinois. See also *Commercial Coin Laundry Systems v. Loon Investments, LLC*, 375 Ill. App. 3d 26, 33 (2007) (citing *Mellon First United Leasing v. Hansen*, 301 Ill. App. 3d 1041, 1047 (1998)).

¶ 49    The additional factors of the future consequences, contract terms, and actual course of dealing also weigh in FordHarrison's favor. *Aasonn*, 2011 IL App (2d) 101125, ¶ 16. As the

*Zamora* court emphasized, when a transaction is self-contained and the contract does not suggest any future transactions, this factor weights in favor of finding no specific jurisdiction. *Zamora*, 2019 IL App (1st) 181642, ¶¶ 54, 60. The terms of the contract also do nothing to help Juristech—there is, for instance, no choice-of-law or forum selection provision naming Illinois as the forum for dispute resolution, which could have provided notice to FordHarrison to expect to face suit in Illinois if it chose to do business with Juristech. See *Commercial Coin*, 375 Ill. App. 3d at 33 (a choice-of-law clause is a relevant, if not determinative, specific jurisdiction consideration). Finally, as explained above, the course of dealing was entirely electronic, and thus had only the most tangential relationship to Illinois as a forum for litigation.

¶ 50    Juristech's citation to *Cook Associates, Inc. v. Colonial Broach & Machine Co.*, 14 Ill. App. 3d 965 (1973) and *Morton v. Environmental Land Systems, Ltd.*, 55 Ill. App. 3d 369 (1977), does not affect our analysis. Juristech primarily depends on *Cook*, where the court stated:

> "Although defendant's only contact within this state was a telephone call, that call was all that was necessary for defendant to achieve its purpose. Once defendant informed plaintiff that it was interested in a certain person to fill a position and agreed to pay plaintiff's referral fee if it eventually hired that person, defendant knew, or should have known, that that it had entered a contract with an Illinois agency, that the agency would perform its services from its office in Illinois, that the fee, if due, would be paid to plaintiff in Illinois, and that if the fee were not paid as promised, defendant might be liable to suit in the Illinois courts." *Cook*, 14 Ill App. 3d at 970.

¶ 51    This authority does not help Juristech, however, because it is directly counter to the modern conception that personal jurisdiction cannot be based only on knowledge that a plaintiff is in a particular forum, without additional contacts directed by the defendant to the forum itself, as

bindingly established by the United States Supreme Court in *Walden*. There, the Court held that "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285. In so finding, it directly rejected the argument that a plaintiff's knowledge that a defendant had strong connections to a forum, and the foreseeability that the defendant would suffer harm in that forum, constituted minimum contacts. *Id.* at 289. Such an approach would "improperly attribute[] a plaintiff's forum connections to the defendant and make those connections 'decisive' in the jurisdictional analysis." *Id.*; see also *Zamora*, 2019 IL App (1st) 181642, ¶ 64.

¶ 52    Juristech attempts to distinguish *Walden* by arguing FordHarrison's conduct was related to Illinois as a forum, and not just Juristech itself as the plaintiff. This argument is belied by the record, as the only contacts FordHarrison had with Illinois as a forum outside of its interaction with Juristech are those related to its Chicago office, which have nothing to do with the O'Donnell hire, and thus are irrelevant to a specific personal jurisdiction analysis in this case. See *Rios*, 2020 IL 125020, ¶ 23.

¶ 53    Finally, Juristech argues this court should not consider the emails it attached as exhibits to its amended complaint as factual bases from which to analyze personal jurisdiction. It cites *McCormick v. McCormick*, 118 Ill. App. 3d 455, 460-61 (1983), for the proposition that information in an exhibit attached to a complaint only negates contrary information in the complaint's allegations if the exhibit is the instrument underlying the suit, which is not the case here. Specifically, Juristech wants to discount the impact of the email attachments which show Juristech contacted FordHarrison on September 9, 2020 to initiate the O'Donnell hire, arguing the emails cannot be used to counter the amended complaint's general allegation that FordHarrison was subject to personal jurisdiction in Illinois.

¶ 54   This argument fails because there is no issue of an exhibit negating a proper allegation in this case. The law is clear that a court may, in resolving a motion to dismiss for personal jurisdiction, consider any "documents," and the documents available in this record include emails that show Juristech initiated the contact for the transaction in question. *Madison*, 2012 IL App (1st) 112334, ¶ 34. The amended complaint does not contain any allegations that the emails negate, aside from conclusory statements which do not constitute factual allegations a court must accept in reviewing a motion to dismiss. See *Merrilees v. Merrilees*, 2013 IL App (1st) 121897, ¶ 14; *Gordon v. Tow*, 148 Ill. App. 3d 275, 281 (1986). In fact, the amended complaint acknowledges that the O'Donnell hire was a separate transaction from any previous interaction between Juristech and FordHarrison, and the attached emails simply provide additional information which the circuit court (and this court) could use to determine who initiated the O'Donnell hire. That Juristech does not like the consequences of its decision to attach the emails to the amended complaint does not change the fact that the law makes them a relevant and appropriate part of the record for resolving FordHarrison's motion to dismiss, and neither does the proposition from *McCormick*.

¶ 55                                     CONCLUSION

¶ 56   Under either theory of personal jurisdiction, FordHarrison lacked minimum contacts with Illinois such that the exercise of jurisdiction in Illinois would comport with due process, and accordingly, we affirm the circuit court's dismissal.

¶ 57   Affirmed.